130 P.3d 986

**In re the Matter of STATE of Arizona ex rel. The DEPARTMENT OF ECONOMIC SECURITY (Cynthia Denise Demetz), Petitioners–Appellees,**

v.

**Kevin Lee DEMETZ, Respondent–Appellant.**

No. 1 CA–CV 05–0148.

Court of Appeals of Arizona, Division 1, Department E.

March 28, 2006.

Terry Goddard, Attorney General By Kristin M. Wurr, Assistant Attorney General, Phoenix, Attorneys for Petitioner–Appellee.

Troy L. Brown, P.C. By Troy L. Brown, Gilbert, Attorneys for Respondent–Appellant.

## OPINION

TIMMER, Judge.

¶ 1 We are asked to decide in this appeal whether the annulment of a child's marriage during her minority and before she would have otherwise become emancipated serves to revive the child's unemancipated status, thereby rekindling a parent's child support obligation. For the reasons that follow, we decide that the child's unemancipated status revives in such circumstances.

## BACKGROUND

¶ 2 Kevin Lee DeMetz ("Father") and Cynthia DeMetz ("Mother") married and had one child, Becky, who was born on July 29, 1983. Father and Mother divorced in 1985, and the superior court ordered Father to pay $175 per month for child support.

¶ 3 On May 3, 2000, sixteen-year-old Becky married Jason with Mother's consent, although Becky continued to live with and be supported by Mother. Seven months later, Becky petitioned the court to annul her marriage on grounds of fraudulent inducement. Jason agreed to the annulment, and the court entered a consent decree of annulment on May 9, 2001 when Becky was seventeen years old. Thereafter, Becky continued to live with Mother and attend high school until she attained the age of nineteen on July 29, 2002.

¶ 4 On June 17, 2004, the State, through the Department of Economic Security, asked the superior court to enter judgment against Father for past due child support plus interest. According to the State, Father was in arrears $22,140.03, exclusive of interest, for the time period December 1, 1985 through May 31, 2004. Father opposed the action, contending it was barred by Arizona Revised Statutes ("A.R.S.") section 25–503(I) (Supp. 2005), which provides that any request for support arrearages must be filed "not later than three years after the emancipation of all of the children who were the subject of the court order." Father maintained that Becky became emancipated on the date of her marriage and, therefore, the State had been required to file its request for judgment on or before May 3, 2003.

¶ 5 After conducting a hearing, the trial court ruled that although Becky became emancipated when she married Jason, the annulment returned her to single, unemancipated status. Thereafter, according to the court, Becky became emancipated on her nineteenth birthday,[1] and the three-year limitation period set forth in § 25–503(I) com-

---

1. *See* A.R.S. § 25–501(A) (Supp.2005) (stating support obligation continues until child's nineteenth birthday if child still attending high school or an equivalency program); A.R.S. § 25– 503(M)(5) (providing child emancipated on date support obligation terminates under § 25–501(A) if obligation extended under that provision).

menced running. However, the court ruled that Father's obligation to pay child support was suspended during the term of Becky's marriage. Ultimately, the court entered judgment against Father for $50,678.02 representing arrearages and interest. This appeal followed.

## DISCUSSION

¶ 6 Father first argues that the superior court erred by ruling that Becky's emancipated status terminated with the annulment of her marriage because the legislature plainly declared in A.R.S. § 25–503 that once a child marries, that child is forever emancipated. The State counters that a proper construction of § 25–503 supports the trial courts ruling. We review issues of statutory interpretation de novo. *See State Comp. Fund v. Superior Court (EnerGCorp, Inc.)*, 190 Ariz. 371, 374–75, 948 P.2d 499, 502–03 (App.1997).

¶ 7 The ultimate goal in statutory interpretation is to discern the intent of the legislature. *Zamora v. Reinstein*, 185 Ariz. 272, 275, 915 P.2d 1227, 1230 (1996). We look first to the language of the pertinent statutes, *Calmat of Ariz. v. State ex rel. Miller*, 176 Ariz. 190, 193, 859 P.2d 1323, 1326 (1993), and will ascribe plain meaning to their terms unless they are ambiguous. *Rineer v. Leonardo*, 194 Ariz. 45, 46, ¶ 7, 977 P.2d 767, 768 (1999). If the statutory language is unclear, we consider secondary principles of construction to glean legislative intent. *See Fuentes v. Fuentes*, 209 Ariz. 51, 55, ¶ 12, 97 P.3d 876, 880 (App.2004). With these principles in mind we examine A.R.S. § 25–503.

¶ 8 Section 25–503 provides in relevant part as follows:

I. The department or its agent or a party entitled to receive support may file a request for judgment for support arrearag-

es not later than three years after the emancipation of all of the children who were the subject of the court order. . . . .
If emancipation is disputed, this subsection shall be liberally construed to effect its intention of diminishing the limitation on the collection of child support arrearages.

. . . .

M. For the purposes of subsections H and I of this section, a child is emancipated:

1. On the date of the child's marriage.[2]

. . . .

We disagree with Father that the above-quoted provision plainly expresses the legislature's intent that a child emancipated by marriage cannot return to unemancipated status if the marriage is later annulled when the child is still a minor. The issue is simply not addressed.[3] We therefore turn to secondary principles of statutory construction to discern legislative intent. *See Fuentes*, 209 Ariz. at 55, ¶ 12, 97 P.3d at 880.

¶ 9 We commence our review by examining the statutorily prescribed effect of annulment on a child's marriage. *See State v. Thomason*, 162 Ariz. 363, 366, 783 P.2d 809, 812 (App.1989) (holding statute should be explained in conjunction with other statutes which relate to same subject) (citing *State ex rel. Larson v. Farley*, 106 Ariz. 119, 471 P.2d 731 (1970)). Upon annulment, a marriage is deemed "dissolve[d]" and adjudged "null and void." A.R.S. § 25–301 (2000).[4] Thus, unlike a dissolution decree, which terminates a valid marriage as of the date of judgment, an annulment decree invalidates a marriage from its inception, thereby establishing that the marital status never existed. *State ex rel. Dept. of Health & Human Res., Bureau of Child Support Enforcement v. Farmer*, 206 W.Va. 249, 523 S.E.2d 840, 845 (1999);

2. A child is also emancipated upon the child's eighteenth birthday, adoption, death, or beyond the age of majority if the support obligation is extended for statutorily described reasons. A.R.S. § 25–503(M)(2)–(5).

3. In contrast, other states have explicitly addressed the consequences of an annulment or dissolution. Chadwick N. Gardner, *Dont Come Cryin to Daddy! Emancipation of Minors: When is a Parent Free at Last from the Obligation of*

*Child Support?* 33 U. Louisville J. Fam. L. 927, 941–42 nn. 122 & 127 (1995) (collecting statutes).

4. Section 25–301 provides: "The superior court may dissolve a marriage, and may adjudge a marriage to be null and void when the cause alleged constitutes an impediment rendering the marriage void."

*Durham v. Miceli,* 15 Conn.App. 96, 543 A.2d 286, 287 (1988); 55 C.J.S. *Marriage* § 63 (Supp.2005). The seminal question in this case is whether a decree that nullifies a child's marriage similarly nullifies the emancipated status of a child as established by § 25–503(M)(1).

¶ 10 To answer this question, we consider the role served by § 25–503(M) in our child support statutes and liberally construe that provision to effect its goal. *State v. Huskie,* 202 Ariz. 283, 285, ¶ 5, 44 P.3d 161, 163 (App.2002) (recognizing that to interpret unclear statute court should consider "the statute's context, subject matter, historical background, effects, consequences, spirit, and purpose"); A.R.S. § 1–211(B) (2002) ("Statutes shall be liberally construed to effect their objects and to promote justice."). Arizona's public policy mandates that parents financially support their dependent children "in order to relieve or avoid the burden often borne by the general citizenry through public assistance programs." A.R.S. § 46–401 (2005); *see also* A.R.S. § 25–501(A) (providing that with exception, "every person has the duty to provide all reasonable support for that person's natural and adopted minor, unemancipated children, regardless of the presence or residence of the child in this state"). Indeed, that policy is explicitly reflected in the legislature's pronouncement in § 25–503(I) that if emancipation is disputed, the courts should liberally construe that subsection to further its purpose of "diminishing the limitation on the collection of child support arrearages."

¶ 11 Section 25–503(M) sets forth a limited number of events, including marriage, that automatically emancipate a child, thereby relieving parents from their support obligations. Marriage is traditionally viewed as an emancipation event because the new relationship is inconsistent with the continuation of parental control and obligations. *Crook v. Crook,* 80 Ariz. 275, 276–77, 296 P.2d 951, 952 (1956); *In re Marriage of Fetters,* 41 Colo. App. 281, 584 P.2d 104, 106 (1978) (citation omitted). But when that relationship is

deemed void during the child's minority, that inconsistency vanishes. No reason therefore appears to defeat revival of the child's unemancipated status. Significantly, interpreting § 25–503(M)(1) to permit this revival furthers Arizona's policy of placing the burden of financially supporting minor children on parents rather than on the public coffers.

¶ 12 Father argues that although a child's unemancipated status can revive upon annulment of a void marriage, that status cannot be similarly revived upon annulment of a voidable marriage, such as that of Becky and Jason. In Arizona, a "void" marriage is one prohibited by A.R.S. § 25–101 (2000),[5] never comes into existence, and cannot be ratified. *In re Mortenson's Estate,* 83 Ariz. 87, 90, 316 P.2d 1106, 1107 (1957); *Medlin v. Medlin,* 194 Ariz. 306, 308, ¶ 9, 981 P.2d 1087, 1089 (App.1999). A "voidable" marriage, on the other hand, is one in which an impediment to marriage exists but the marriage is nevertheless subject to ratification by the injured party. *Hodges v. Hodges,* 118 Ariz. 572, 574, 578 P.2d 1001, 1003 (App.1978); A.R.S. § 25–301. According to Father, because voidable marriages are valid at their inception, § 25–503(M)(1) applies to emancipate the child regardless of a later annulment. Consequently, because both parties agree that Becky's marriage was voidable, Father contends that Becky became emancipated at the inception of her marriage and remained emancipated after the annulment.

¶ 13 We reject Father's argument for two reasons. First, Father draws a distinction between void and voidable marriages that is meaningless in this case. The annulment statute, A.R.S. § 25–301, applies to both types of marriages. *Hodges,* 118 Ariz. at 574, 578 P.2d at 1003 (citing *Means v. Indus. Comm'n,* 110 Ariz. 72, 515 P.2d 29 (1973)). Thus, although void and voidable marriages are indeed different, once an annulment decree is issued, the subject marriage is deemed invalid from its inception regardless whether the marriage was void or merely voidable.[6] *Farmer,* 523 S.E.2d at 845; *Dur-*

---

5. Section 25–101 prohibits marriages between close relatives and persons of the same sex.

6. Because void marriages are never effective, an annulment decree is unnecessary to nullify such "marriages." However, a party to a void mar-

*ham,* 543 A.2d at 287; 55 C.J.S. *Marriage* § 63.

¶ 14 Second, although we agree that Becky's marriage was originally valid and therefore emancipated her on her wedding day, it does not necessarily follow that this status was irrevocable. *Hodges v. Hodges,* cited by Father, does not compel a different conclusion. In that case, this court addressed whether the annulment of a wife's second marriage revived her first husband's obligation to pay spousal maintenance. 118 Ariz. at 573, 578 P.2d at 1002. Because A.R.S. § 25–327(B) provided that the obligation terminated upon remarriage of the party receiving maintenance, the key issue was whether an annulled marriage constituted a "remarriage" under the statute. *Id.* The court noted the legal fiction that an annulment decree "relates back" to destroy a marriage from the beginning, but held that courts sometimes ignore that principle "as the purposes of justice are deemed to require." *Id.* at 574, 578 P.2d at 1003. The court then examined policy considerations to conclude that a party's post-dissolution marriage, which is later annulled, is nevertheless a "remarriage" for purposes of § 25–327(B), thereby permanently terminating the former spouse's support obligation. *Id.* at 575–76, 578 P.2d at 1004–05. The policy considerations supporting the holding in *Hodges* do not compel a similar conclusion in this case. Those considerations focused on the uncertainty in financial planning faced by the first spouse if revival of the support obligation was possible, ethical issues, and the responsibility of the spouse receiving payments to make a wise decision in deciding to remarry, thereby terminating the prior spouses obligation.[7] *Id.* As previously explained, *see supra* ¶ 10, public policy directs that parents financially support their minor children, even if those children make unwise decisions. Moreover, assuming the parent with the sup-

port obligation might rely on the validity of the childs marriage in making financial plans, that period of reliance would not last indefinitely but only until the child would otherwise become emancipated. In short, the policy concerns underlying the holding in *Hodges* do not apply to a construction of A.R.S. § 25–503(M)(1).

¶ 15 Additionally, as the State notes, our courts have recognized that an annulment decree can revive a previous legal status. It has been long held in Arizona that the annulment of a surviving spouse's second marriage entitles that spouse to reinstatement of worker's compensation death benefits pursuant to A.R.S. § 23–1046(A)(2) upon repayment of a previously accepted lump sum settlement. *Jackson v. Indus. Commn,* 121 Ariz. 602, 604, 592 P.2d 1258, 1260 (1979); *Means,* 110 Ariz. at 74–75, 515 P.2d at 31–32. The *Hodges* court distinguished these cases by pointing out that reviving death benefits upon entry of an annulment decree was consistent with the notion that worker's compensation statutes are to be liberally construed to further their purpose of placing the burden of death and injury upon industry. 118 Ariz. at 575, 578 P.2d at 1004. Likewise, construing A.R.S. § 25–503(M)(1) to permit revival of a child's unemancipated status upon entry of an annulment decree furthers Arizona's public policy to charge parents with the responsibility of financially supporting their minor children.

¶ 16 For the foregoing reasons, we hold that when Becky married she became emancipated pursuant to A.R.S. § 25–503(M)(1), and Father's obligation to make future child support payments automatically terminated. However, upon annulment of Becky's marriage before she would have otherwise become emancipated, she was returned to unemancipated status and Father's child support obligation likewise revived.[8] Thereafter, Father was obliged to

---

riage may nevertheless seek such a decree to clarify this status.

7.  Specifically, the *Hodges* court was persuaded in its holding by the facts that (1) a second marriage might last indefinitely before annulment, thereby leaving the prior spouse in financial limbo, (2) revival of the spousal maintenance obligation would entitle the beneficiary to payments for the period spent living with the second

spouse, thereby creating an ethical conundrum, and (3) the re-marrying spouse, as a responsible person, should be held to the decision, presumably relied on by others, to terminate the support obligation. 118 Ariz. at 576, 578 P.2d at 1005.

8.  Other courts and commentators that have addressed comparable issues have reached like conclusions. *See Wadoz v. United Natl Indem. Co.,* 274 Wis. 383, 80 N.W.2d 262, 267 (1957)

**292**

make support payments until Becky became emancipated on July 29, 2002. Because the State filed this lawsuit to collect support arrearages within three years of that date, the limitation period set forth in § 25–503(I) did not apply to defeat the State's complaint. Consequently, the trial court did not err in its ruling, and we therefore affirm.

## CONCLUSION

¶ 17 For the reasons explained, we hold that a child's entry into a valid yet voidable marriage emancipates that child, thereby automatically terminating a parent's child support obligation. However, upon entry of a decree annulling that marriage during the child's minority, or before she would have otherwise become emancipated, her unemancipated status revives and the parent's support obligation recommences. Because the State brought its action within three years of the date Becky finally became emancipated, the trial court correctly ruled that this action was not barred by the applicable statute of limitations. We therefore affirm.

CONCURRING: PATRICIA A. OROZCO, Presiding Judge and SUSAN A. EHRLICH, Judge.

(concluding child may return to the status of an unemancipated minor); *Vaupel v. Bellach,* 261 Iowa 376, 154 N.W.2d 149, 151 (Iowa 1967) (emancipation is not necessarily a continuing status and may be terminated at any time during the child's minority); *Fernandez v. Fernandez,* 717 S.W.2d 781, 783 (Tex.App.1986) (same); *Fetters,* 584 P.2d at 106 (holding emancipation occurs automatically upon marriage but revives if marriage terminated during minority); 59 Am. Jur.2d *Parent and Child* § 85 (2005) (emancipation may be terminated at any time during the childs minority); 24A Am.Jur.2d. *Divorce and Separation* § 1042 (2005) (annulment of the marriage of a minor may reinstate the parents obligation to pay child support); cf. *Farmer,* 523 S.E.2d at 846 (refusing to revive child support obligation upon childs divorce rather than annulment).