169 P.3d 115

**STATE of Arizona, ex rel. Andrew P. THOMAS, Maricopa County Attorney, Petitioner,**

**v.**

**The Honorable Connie CONTES, Judge of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent Judge,**

**Israel Saldana Perez, Real Party in Interest.**

**No. 1 CA–SA 07–0201.**

Court of Appeals of Arizona, Division 1, Department E.

Oct. 25, 2007.

Andrew P. Thomas, Maricopa County Attorney By David E. Wood, Lisa Marie Martin, Deputy County Attorneys, Phoenix, Attorneys for Petitioner.

Hawkins & Hawkins, PLLC By Mark W. Hawkins, Mesa, Attorneys for Real Party in Interest.

## OPINION

TIMMER, Judge.

¶ 1 We are asked in this special action to decide whether the definition of "prohibited possessor" in Arizona Revised Statutes ("A.R.S.") section 13–3101(A)(6)(e) (Supp. 2006), which includes persons who are prohibited possessors under 18 United States Code ("U.S.C.") section 922(g)(5), as excepted by subsection (y) of that provision, requires proof that possession of any firearm or ammunition had a nexus with interstate or foreign commerce. Based on the plain language of A.R.S. § 13–3101(A)(6)(e), we hold that it does.

## BACKGROUND

¶ 2 On March 2, 2007, a Mesa Police officer stopped real-party-in-interest Israel Saldana Perez after he was observed speeding and weaving through traffic. The officer arrested Perez when he failed to produce identification, instead providing a Mexican electoral card and drivers license, both of which appeared phony. During a vehicle search incident to arrest, the officer discovered a Smith & Wesson .38 revolver in the center console. A subsequent fingerprint check with the Department of Homeland Security revealed that Perez had been deported from the United States on three prior occasions and had tried to re-enter the United States by using different aliases. Perez's family members later confirmed that Perez was born in Mexico and was in the United States illegally.

¶ 3 The grand jury indicted Perez for multiple offenses, including misconduct involving weapons pursuant to A.R.S. § 13–3102(A)(4) ("Count One"), which prohibits a person from knowingly possessing a deadly weapon or prohibited weapon while being a prohibited possessor. The State alleged Perez was a "prohibited possessor" pursuant to A.R.S. § 13–3101(A)(6)(e), which defines such a person as one "[w]ho is a prohibited possessor under 18 United States Code section 922(g)(5), except as provided by 18 United States Code section 922(y)." Section 922(g)(5), in turn, provides as follows:

(g) It shall be unlawful for any person—

. . . .

(5) who, being an alien—

(A) is illegally or unlawfully in the United States; or

(B) except as provided in subsection (y)(2), has been admitted to the United States under a nonimmigrant visa. . . .

. . . .

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

Section 922(y)(2) provides an exception for aliens admitted under a nonimmigrant visa and who fall within at least one of four categories.[1]

(A) admitted to the United States for lawful hunting or sporting purposes or is in possession of a hunting license or permit lawfully issued in the United States;

---

1. Pursuant to 18 U.S.C. § 922(y)(2), an alien admitted to the United States under a nonimmigrant visa is not a prohibited possessor if that person is:

¶ 4 Perez subsequently filed a motion to dismiss or for remand to the grand jury for a new determination of probable cause regarding Count One. He argued the indictment was insufficient as a matter of law because the State failed to present any evidence to the grand jury that the Smith & Wesson revolver was shipped or transported in interstate or foreign commerce or was possessed in or affected commerce, as required by 18 U.S.C. § 922(g)(5). The State did not contest that it had failed to introduce evidence of the revolver's interstate or foreign commerce nexus. Rather, the State argued that such evidence was unnecessary to secure a conviction under A.R.S. § 13–3101(A)(6)(e), and consequently neither dismissal nor remand was necessary. The trial court granted Perez's motion and remanded to the grand jury for a new determination of probable cause regarding Count One. The court reasoned that by enacting § 13–3101(A)(6)(e), the legislature adopted the entirety of 18 U.S.C. § 922(g)(5), including its requirement that the prohibited weapon have an interstate or foreign commerce nexus. This special action followed.[2]

## JURISDICTION AND STANDARD OF REVIEW

### DISCUSSION

¶ 5 We exercise our discretion to accept jurisdiction in this special action because it presents a legal question of first impression and of statewide importance, and because the State has no equally plain, speedy, or adequate remedy by appeal.[3] Ariz. R.P. Spec. Act. 1(a); *see State ex rel. Corbin v. Superior Court,* 161 Ariz. 181, 183, 777 P.2d 679, 681 (App.1988) (holding special action

(B) an official representative of a foreign government who is—
(i) accredited to the United States Government or the Government's mission to an international organization having its headquarters in the United States; or
(ii) en route to or from another country to which that alien is accredited;
(C) an official of a foreign government or a distinguished foreign visitor who has been so designated by the Department of State; or
(D) a foreign law enforcement officer of a friendly foreign government entering the United States on official law enforcement business.

proper means for State to seek relief from a remand for new determination of probable cause), *vacated in part on other grounds, State ex rel. Corbin v. Ybarra,* 161 Ariz. 188, 777 P.2d 686 (1989); *State v. Fell,* 2007 WL 2570196, 3, ¶ 12, 512 Ariz. 13, ¶ 12, 171 P.3d 193, 195 (Ariz.App.2007) (accepting special action jurisdiction to review trial court's order remanding for new determination of probable cause). We review the trial court's interpretation of A.R.S. § 13–1301(A)(6)(e) de novo as a question of law. *State v. Getz,* 189 Ariz. 561, 563, 944 P.2d 503, 505 (1997).

### DISCUSSION

¶ 6 When construing statutes, our primary goal is to ascertain the legislature's intent. *Zamora v. Reinstein,* 185 Ariz. 272, 275, 915 P.2d 1227, 1230 (1996). We first look to the text of the relevant statutes. *State v. Christian,* 205 Ariz. 64, 66, ¶ 6, 66 P.3d 1241, 1243 (2003). If the statutory language is clear, we ascribe plain meaning to its terms. *Rineer v. Leonardo,* 194 Ariz. 45, 46, ¶ 7, 977 P.2d 767, 768 (1999). If ambiguity exists, we employ secondary principles of statutory construction to glean legislative intent. *State ex rel. Dep't of Econ. Sec. v. Demetz,* 212 Ariz. 287, 289, ¶ 7, 130 P.3d 986, 988 (App.2006).

¶ 7 The State argues the trial court erred in ruling that A.R.S. § 13–3101(A)(6)(e) requires the State to prove an interstate or foreign commerce nexus involving the Smith & Wesson revolver because the plain language of that statute demonstrates the legislature's intent to adopt only the portion of 18 U.S.C. § 922(g)(5) that defines the class of aliens who can be prohibited possessors under that provision. Specifically, the State

2. We previously issued an order accepting jurisdiction and denying relief. In our order, we stated that a written disposition fully explaining our decision would follow. This opinion provides that explanation.

3. Perez asserts that if we accept jurisdiction, we should dismiss the case with prejudice. Because Perez did not file a cross-petition challenging the trial court's refusal to dismiss the case, the propriety of the court's ruling on this issue is not before us.

contends that the legislature's reference to a specific subsection of § 922(g) rather than its entirety reflects the legislature's intent to exclude the interstate or foreign commerce requirement of § 922(g). Perez responds that the plain language of § 13–3101(A)(6)(e) adopts the entirety of 18 U.S.C. § 922(g)(5), including the portion addressing commerce. We agree with Perez.

¶ 8 Section 13–3101(A)(6)(e), A.R.S., defines a prohibited possessor as "any person ... [w]ho is a prohibited possessor under 18 [U.S.C. § ] 922(g)(5), except as provided by 18 [U.S.C. § ] 922(y)." Pursuant to 18 U.S.C. § 922(g)(5), a "prohibited possessor" is not merely one who is illegally or unlawfully in the United States or, with exception, admitted to the United States under a nonimmigrant visa. Rather, to be a prohibited possessor under § 922(g)(5), such persons must also either ship, transport, or receive a firearm or ammunition in interstate or foreign commerce, possess a firearm or ammunition in commerce, or possess a firearm or ammunition in a manner that affects commerce. Consequently, because the plain language of § 13–3101(A)(6)(e) incorporates the definition of "prohibited possessor" under § 922(g)(5), and the latter definition requires proof of an interstate or foreign commerce nexus, § 13–3101(A)(6)(e) necessarily requires proof of the same interstate or foreign commerce nexus. *See Janson ex rel. Janson v. Christensen*, 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991) (stating general rule that "the best and most reliable index of a statute's meaning is its language and, when the language is clear and unequivocal, it is determinative of the statute's construction").

¶ 9 The State next argues we should refuse to interpret § 13–3101(A)(6)(e) in the manner described above because (1) the legislative

history of the provision reveals the legislature did not intend to adopt the entirety of § 922(g)(5), and (2) this interpretation will lead to absurd results. We will refrain from adopting the plain meaning of § 13–3101(A)(6)(e) if to do so would either be contrary to the legislature's intent or lead to an absurd result. *Resolution Trust Corp. v. W. Tech., Inc.*, 179 Ariz. 195, 201, 877 P.2d 294, 300 (App.1994). We therefore address the State's contentions in turn.

¶ 10 Contrary to the State's view, the legislative history for A.R.S. § 13–3101(A)(6)(e) supports the plain-meaning interpretation of that provision. *Carrow Co. v. Lusby*, 167 Ariz. 18, 20, 804 P.2d 747, 749 (1990) ("Legislative intent often can be discovered by examining the development of a particular statute."). In the Spring of 2004, the Arizona Senate passed Senate Bill ("S.B.") 1345, which proposed to amend § 13–3101(A)(6) by adding subsection (e) to expand the definition of "prohibited possessor," in pertinent part, as follows:

6. "Prohibited possessor" means any person:

. . . .

(e) Who is an undocumented alien or a nonimmigrant alien traveling with or without documentation in this state for business or pleasure or who is studying in this state and who maintains a foreign residence abroad.

2004 Ariz. Sess. Laws, ch. 134, Senate Engrossed Version. The proposed amendment excluded from the definition those nonimmigrant aliens who fell within particular categories, which predominantly mirrored those set forth in 18 U.S.C. § 922(y).[4] S.B. 1345 did not mention § 922(g)(5). 2004 Ariz. Sess. Laws, ch. 134, Senate Engrossed Version.

---

4. Specifically, S.B. 1345 provided that proposed subsection (e) did not apply to:

(i) Nonimmigrant aliens who possess a valid hunting license or permit that is lawfully issued by a state in the United States.

(ii) Nonimmigrant aliens who enter the United States to participate in a competitive target shooting event or to display firearms at a sports or hunting trade show that is sponsored by a national, state, or local firearms trade organization devoted to the competitive use or other sporting use of firearms.

(iii) Certain diplomats.

(iv) Officials of foreign governments or distinguished foreign visitors who are designated by the United States Department of State.

(v) Foreign law enforcement officers of friendly foreign governments who enter the United States on official law enforcement business.

(vi) Persons who have received a waiver from the United States Attorney General.

2004 Ariz. Sess. Laws, ch. 134, Senate Engrossed Version.

¶ 11 The Senate Fact Sheet for S.B. 1345 described the purpose of the proposed amendment as, "[p]rohibit[ing] undocumented aliens and nonimmigrant aliens from possessing firearms and other weapons." 2004 Ariz. Sess. Laws, ch. 134, Senate Fact Sheet for S.B. 1345 (May 6, 2004). The sheet noted that federal law already prohibited nonimmigrant aliens from possessing such weapons, but that state law enforcement agencies must rely on federal agencies to enforce this prohibition. *Id.* After noting the number of firearms confiscated by the Tucson sector of the United States Border Patrol during a one-year period, and that many of the firearms were involved in narcotics trafficking, the fact sheet stated, "S.B. 1345 would allow local law enforcement to investigate and prosecute these types of cases." *Id.*

¶ 12 When S.B. 1345 went before the House of Representatives, the House Judiciary Committee "[struck] the language that add[ed] undocumented aliens or non-immigrant aliens to the list of prohibited possessors ... [and][e]xpand[ed] the definition of a prohibited possessor to include any person who is a prohibited possessor under 18 U.S.C. § 922(g)(5)." 2004 Ariz. Sess. Laws, ch. 134, House Summary for S.B. 1345 (Apr. 20, 2004); House Adopted Amendment (Mar. 25, 2004). S.B. 1345, as amended by the House of Representatives, was ultimately adopted as A.R.S. § 13–3101(A)(6)(e).

¶ 13 The legislative history for A.R.S. § 13–3101(A)(6)(e) demonstrates the legislature considered defining "prohibited possessors" as including specified classes of aliens, but ultimately rejected this definition in favor of adopting the meaning of a prohibited possessor under 18 U.S.C. § 922(g)(5). If the legislature had intended to import only the portion of § 922(g)(5) that classifies aliens who can be prohibited possessors under that provision, as the State argues, it could have readily done so by adopting the Senate version of S.B. 1345. The legislature's affirmative choice to reject the original version of S.B. 1345 and instead adopt § 922(g)(5) supports the plain-meaning interpretation of A.R.S. § 13–3101(A)(6)(e) as adopting the entirety of the federal provision. *Taylor v.*

*Graham County Chamber of Commerce,* 201 Ariz. 184, 191, ¶ 28, 33 P.3d 518, 525 (App. 2001) (stating courts "cannot second-guess or overturn what appear to be clear, deliberate legislative choices").

¶ 14 We also reject the State's contention that the plain-meaning interpretation of A.R.S. § 13–3101(A)(6)(e) will lead to absurd results because it will treat persons falling within that definition differently than other prohibited possessors defined by § 13–3101(A)(6) and will "gut" Arizona's misconduct-involving-weapons statute. The State points out that prohibited possessors in Arizona are prohibited from knowingly possessing a deadly weapon or prohibited weapon, which are defined as including, among other items, guns, poison gas, grenades, bombs, rockets, and nunchakus. A.R.S. §§ 13–3101(A)(1), (7), –3102(A)(4). It further asserts that 18 U.S.C. § 922(g)(5) includes within its definition of "prohibited possessor" a requirement of an interstate or foreign commerce nexus involving a "firearm or ammunition," and that 18 U.S.C. § 921(a)(3) limits the definition of "firearm" to a gun, its frame, or a silencer. According to the State, therefore, adopting the entirety of § 922(g)(5) would mean, for example, that an undocumented alien would not be prohibited from possessing poison gas, grenades, bombs, rockets, or nunchakus unless the alien also possessed a gun, its frame, a silencer, or ammunition with a nexus to interstate or foreign commerce. The State contends the legislature could not have intended this result in light of its intent to expand the existing list of persons prohibited from possessing firearms and "other weapons." *See* 2004 Ariz. Sess. Laws, ch. 134, Senate Fact Sheet for S.B. 1345 (May 6, 2004).

■ ¶ 15 The State incorrectly recites the federal definition of "firearm" by failing to acknowledge the whole definition under 18 U.S.C. § 921(a)(3). In addition to defining a "firearm" as, essentially, a gun, its frame, or a silencer, § 921(a)(3) defines a "firearm" as any destructive device. Section 921(a)(4), in turn, defines "destructive device" as including items such as poison gas, grenades,

**530**

bombs, rockets, and similar devices.[5] Thus, persons defined as prohibited possessors under the plain meaning of A.R.S. § 13–3101(A)(6)(e) are prohibited from possessing destructive weapons even if they do not simultaneously possess a gun or like weapon. Although some weapons, such as nunchakus, do not fall within the federal definition of "firearms," we cannot say this distinction makes the plain-meaning interpretation of § 13–3101(A)(6)(e) absurd. *See State v. Estrada,* 201 Ariz. 247, 251, ¶ 17, 34 P.3d 356, 360 (2001) (citations and quotations omitted) ("A result is absurd if it is so irrational, unnatural, or inconvenient that it cannot be supposed to have been within the intention of persons with ordinary intelligence and discretion."). As previously noted, *see supra* ¶ 11, the legislative history for § 13–3101(A)(6)(e) indicates the provision was enacted to enable local law enforcement to investigate and prosecute illegal aliens who possess firearms and other weapons in violation of federal law. *See* 2004 Ariz. Sess. Laws, ch. 134, Senate Fact Sheet for S.B. 1345 (May 6, 2004). Consequently, we cannot say the legislature acted "irrationally" by defining "prohibited possessor" in a manner that mirrors the federal definition, even if such persons cannot be prosecuted for possessing certain weapons unless the State also proves possession of firearms or ammunition as defined by federal law. If the State wishes to remove this limitation, it must ask the legislature to amend § 13–3101(A)(6)(e).

¶ 16 In summary, we hold that the plain language of A.R.S. § 13–3101(A)(6)(e)

5. Section 921(a)(4) provides, in significant part, as follows:
The term "destructive device" means—
(A) any explosive, incendiary, or poison gas—
(i) bomb,
(ii) grenade,
(iii) rocket having a propellant charge of more than four ounces,
(iv) missile having an explosive or incendiary charge of more than one-quarter ounce,
(v) mine, or
(vi) device similar to any of the devices described in the preceding clauses;
(B) any type of weapon ... which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, and which has any barrel with a bore of more than one-half inch in diameter; and

adopts all of 18 U.S.C. § 922(g)(5), including the requirement that any firearm, as defined by 18 U.S.C. § 921(a)(3) and (4), or ammunition possessed by affected persons have an interstate or foreign commerce nexus.[6] Because the State failed to present evidence to the grand jury in this case that the Smith & Wesson revolver had such a nexus, the trial court correctly remanded the matter to the grand jury for a redetermination of probable cause as to Count One. Therefore, although we accept jurisdiction in this special action, we deny relief to the State.

CONCURRING: PATRICK IRVINE, Presiding Judge and SHELDON H. WEISBERG, Judge.

(C) any combination of parts either designed or intended for use in converting any device into any destructive device described in subparagraph (A) or (B) and from which a destructive device may be readily assembled.
. . . .

6. Proof of such a nexus is not onerous. The State can satisfy this burden by demonstrating, for example, that the firearm or ammunition was manufactured outside Arizona. *United States v. Humphreys,* 468 F.3d 1051, 1053 (7th Cir.2006) (holding commerce requirement of 18 U.S.C. § 922(g) satisfied by evidence that firearm was manufactured outside state in which it was possessed).