175 P.3d 85

**STATE of Arizona, ex rel. ARIZONA DEPARTMENT OF ECONOMIC SECURITY (Gloria A. Young), Petitioner/Appellee,**

v.

**David C. LEE, III, Respondent/Appellant.**

**No. 1 CA–CV 06–0810.**

Court of Appeals of Arizona, Division 1, Department A.

Jan. 29, 2008.

---

Terry Goddard, Arizona Attorney General By Kathryn E. Harris, Assistant Attorney General, Phoenix, Attorneys for Petitioner/Appellee DES.

Florence M. Bruemmer, Anthem, Attorney for Respondent/Appellant.

## OPINION

HALL, Judge.

¶ 1 In this appeal, we are asked to determine whether the trial court committed reversible error by ordering a parent to provide post-majority child support on the basis that the child was "attending high school" within the meaning of Arizona Revised Statutes (A.R.S.) sections 25–320(F) (2007) and –501(A) (Supp.2007). For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶ 2 Gloria A. Young (Mother) gave birth to four children during her marriage to James H. Mother received public assistance from Aid to Families with Dependent Children (A.F.D.C.) for the support of those children.

¶ 3 On October 2, 1995, the State of Arizona (the State), through the Department of Economic Security, filed a complaint in the trial court to establish paternity of Mother's children.[1] Mother alleged that appellant David C. Lee, III was the biological father of

---

1. The State is permitted to initiate or intervene in actions to establish, modify, or enforce duties of child support pursuant to A.R.S. § 25–509 (2007).

all four children. Genetic testing confirmed that Lee (Father) was, in fact, the biological father of all four children, and the trial court entered an order to that effect on March 20, 1996.

¶4 Subsequently, the trial court held a hearing to determine Father's past and present child support obligations. Father was ordered to pay $871.00 per month beginning May 1, 1996.[2] Father was also ordered to reimburse the State in the amount of $10,196.93 for benefits paid Mother by A.F.D.C.

¶5 On March 29, 2005, the State filed a Request to Enforce Support Order, alleging that Father owed $15,567.53 in past-due child support, plus interest. In response, Father disputed the amount of arrearages and requested credit for, among other things, payments he made after the youngest of the four children "dropped out of high school" at the age of eighteen. Following an evidentiary hearing, the trial court concluded that Father was obligated to support his youngest child (the Child) through February 2003 when the Child received his high school diploma. Father was ordered to pay $9,149.18 in child support arrearages. The trial court entered a signed judgment on December 19, 2005.

¶6 Father subsequently moved for a new trial and/or to alter or amend the judgment pursuant to Rule 59 of the Arizona Rules of Civil Procedure. Specifically, Father challenged the trial court's determination that the Child was not emancipated until February 2003. Relying upon §§ 25–320(F)[3] and –501(A), Father argued that any child support obligation should have ended when the Child turned eighteen in April 2002 or when he should have graduated from high school in May 2002. According to Father, the statutes were not intended to provide an extra year of support to a child on the "five year plan" for high school due to "failing grades and lousy attendance."

¶7 The trial court held oral argument on July 17, 2006, at which time it deemed Fa-

ther's motion to be a motion for reconsideration, granted the motion, and scheduled an evidentiary hearing to determine the date of the Child's emancipation. During the evidentiary hearing, both Mother and Father presented testimony concerning the Child's high school attendance. At the conclusion of the hearing, the trial court determined that the Child had made a "sincere effort" to graduate from high school and that child support should continue through February 2003 when the Child graduated.

¶8 The trial court entered a signed judgment on November 8, 2006. Father timely filed a notice of appeal. We have jurisdiction pursuant to A.R.S. § 12–2101(C) (2003).

## DISCUSSION

### A. Standard of Review

¶9 The crux of the parties' dispute is whether the Child was "actually attending high school" within the meaning of §§ 25–320(F) and –501(A). We review de novo the trial court's interpretation and application of those statutes. See State ex rel. Dep't of Econ. Sec. v. Demetz, 212 Ariz. 287, 289, ¶6, 130 P.3d 986, 988 (App.2006).

### B. The Language of §§ 25–320(F) and –501(A)

¶10 Our ultimate goal in construing a statute is to effectuate the legislature's intent. State v. Huskie, 202 Ariz. 283, 285, ¶5, 44 P.3d 161, 163 (App.2002). We look first to the plain language of the pertinent statutes. Id. If the language is clear and unambiguous, we look no further. Id. If the statutory language is unclear, we consider secondary principles of construction to discern the legislature's intent. Demetz, 212 Ariz. at 289, ¶7, 130 P.3d at 988.

¶11 The statutes before us are virtually identical. See Huskie, 202 Ariz. at 285, ¶7, 44 P.3d at 163. Section 25–320(F) provides, in relevant part:

---

2. The monthly payment amount was reduced to $352.00 by order dated October 7, 1996, and increased to $494.00 by order dated December 4, 1996.

3. Father refers in his briefing to A.R.S. § 25–320(C). However, the statute has been reorganized, and the relevant statutory language now appears in A.R.S. § 25–320(F). 2004 Ariz. Sess. Laws, ch. 195, § 1.

If a child reaches the age of majority while the child is attending high school or a certified high school equivalency program, support shall continue to be provided during the period in which the child is actually attending high school or the equivalency program but only until the child reaches nineteen years of age....

Section 25–501(A) similarly provides, in relevant part:

If a child reaches the age of majority while the child is attending high school or a certified high school equivalency program, support shall continue to be provided while the child is actually attending high school or the equivalency program but only until the child reaches nineteen years of age....

### 1. "Actually Attending High School"

¶ 12 The statutes do not define or describe what the words "actually attending" mean. In such a situation, we construe words left undefined by the legislature according to their "common and approved us[age]." A.R.S. § 1–213 (2002); *see also Circle K Stores, Inc. v. Apache County*, 199 Ariz. 402, 408, ¶ 18, 18 P.3d 713, 719 (App.2001) ("By declining to define a statutory term, the legislature generally intends to give the ordinary meaning to the word.") (citing *Kessen v. Stewart*, 195 Ariz. 488, 491, ¶ 6, 990 P.2d 689, 692 (App.1999)).

¶ 13 The word "attend" is commonly used to mean "to be present," "to take care," "give attention," and "to apply or direct oneself." The American Heritage Dictionary of the English Language (4th ed.2006); *see also Lake Havasu City v. Ariz. Dep't of Health Servs.*, 202 Ariz. 549, 553–54, ¶ 16, 48 P.3d 499, 503–04 (App.2002) (considering common dictionary definitions when statute failed to define terms).

¶ 14 In view of these common and approved usages of the word "attend," we agree with Father that §§ 25–320(F) and –501(A) impose some responsibility on the child to be present in class. However, the statute does not impose a specific attendance requirement, and we believe that whether a child is "actually attending" high school is more appropriately determined on a case-by-

case basis after considering such factors as: (1) whether the child is regularly present in class; (2) the reasons for any absences; and (3) whether the child is taking affirmative steps in pursuit of an education. *See Cossette v. Cossette*, 76 P.3d 795, 798 (Wyo.2003) (adopting a similar case-by-case analysis).

### 2. Arizona's Public Policy

¶ 15 Father argues that §§ 25–320(F) and –501(A) were designed only "to allow a child who turns 18 in the middle of the school year to finish up the school year and be supported," not to "allow a child on the 'five year plan' to have excessive absences ... and finish up school immediately before he turns 19 in order to receive an extra year of support." However, Father cites no authority for this proposition, and we find no such distinction in the applicable statutes.

¶ 16 Father's argument also is inconsistent with Arizona's public policy, which mandates that parents financially support their children until they complete high school. *See Gore v. Gore*, 169 Ariz. 593, 595, 821 P.2d 254, 256 (App.1991) ("[T]he legislature obviously intended to ensure parental support while children were attending high school, which ... would have the effect of helping to prevent high school dropouts for financial reasons."). We previously have indicated that parents are charged with the responsibility to support their children "even if those children make unwise decisions." *Demetz*, 212 Ariz. at 291, ¶ 14, 130 P.3d at 990. Thus, the fact that a child may be on a "five year plan" for high school does not relieve a parent of the duty to support that child so long as he or she is actually attending high school.

### C. The Trial Court's Ruling

¶ 17 Turning to the trial court's ruling in this case, we examine the record only to determine whether substantial evidence exists to support the trial court's action. *In re Estate of Pouser*, 193 Ariz. 574, 579, ¶ 13, 975 P.2d 704, 709 (1999). "Substantial evidence is evidence [that] would permit a reasonable person to reach the trial court's result." *Id.*

¶ 18 The evidence presented in the trial court established that the Child was born on

April 2, 1984. Both Mother and Father testified that the Child was scheduled to graduate from high school in May 2002. The Child did not graduate at that time because he did not have enough credits.

¶ 19 Father introduced copies of the Child's attendance records, transcripts and withdrawal slips in support of his position that the Child was habitually absent and performed poorly. Mother admitted that the Child was "struggling," but explained that he was "[g]iving his best effort" while moving back and forth between his parents' homes. Mother also explained that many of the absences reflected in the Child's attendance records were really instances in which the Child was tardy to class but did not actually miss the entire school day. Mother further testified that while the Child was tardy and/or absent on a number of occasions, "it wasn't like he dropped out of school and then went back" or was "completely absent," because "if he was, they would not have graduated him."[4] The Child ultimately did receive his high school diploma on February 21, 2003.

¶ 20 In view of the foregoing, there was substantial evidence to support the trial court's finding that the Child "was making a sincere effort to graduate from high school" and that Father's child support obligation should continue through February 2003.

### D. Arizona's Child Support Guidelines

■ ¶ 21 Finally, Father argues that the Arizona Child Support Guidelines (the Guidelines) required the trial court to establish May 31, 2002 as the presumptive termination date for Father's child support obligation. Because no modification of the presumptive termination date was requested, Father contends that the trial court abused its discretion by finding that Father's child support obligation continued through February 2003.

¶ 22 Father did not raise this argument in the trial court. Absent exceptional circumstances not present here,[5] this court will not consider arguments not first presented to the trial court, *Scottsdale Princess P'ship v. Maricopa County*, 185 Ariz. 368, 378, 916 P.2d 1084, 1094 (App.1995). Because the record before us gives no indication that Father raised or even referred to the Guidelines below, he has waived consideration of this argument.

¶ 23 In any event, the Guidelines, as amended effective January 1, 2005, merely provide, in relevant part:

> Duration of child support is governed by Arizona Revised Statutes, Sections 25–320 and 25–501, except as provided in Arizona Revised Statutes, Section 25–1304.

> Upon entry of an initial or modified child support order, the court shall, *or in any subsequent action relating to the child support order, the court may,* establish a presumptive date for the termination of the current child support obligation. The presumptive termination date shall be the last day of the month of the 18th birthday of the youngest child included in the order unless the court finds that it is projected that the youngest child will not complete high school by age 18. In that event, the presumptive termination date shall be the last day of the month of the anticipated graduation date or age 19, whichever occurs first.

> . . . .

> The presumptive date may be modified upon changed circumstances.

> . . . .

> For purposes of determining the presumptive termination date, it is further presumed:

> . . . .

---

4. This is consistent with Mother's sworn testimony during the July 17, 2006 oral argument that the Child "never officially withdrew from school." The trial court credited Mother's testimony on this point and found that certain withdrawal notices offered by Father were not dispositive of whether the Child had stopped attending high school.

5. *See, e.g., Cross v. Cross*, 94 Ariz. 28, 31, 381 P.2d 573, 575 (1963) ("This doctrine was not urged below, but we will consider any legal theory within the issues and supported by the evidence which tends to support and sustain the judgment of the trial court.").

B. That a child will graduate in the month of May after completing the 12th grade.

A.R.S. § 25–320 app. § 4 (emphasis added). The initial child support order and all subsequent modifications in this case were entered in 1996. The version of the Guidelines then in effect did not contain a comparable provision requiring the trial court to establish a presumptive date for the termination of the child support obligation. *See* A.R.S. § 25–320 app. (2000). In effect, Father is claiming on appeal that the trial court was required to establish a presumptive termination date for a child support obligation that had already ceased when this enforcement action was filed in 2005. We disagree. The trial court was not required—indeed, did not possess the discretion—to retroactively impose a "presumptive termination date" for a child support obligation that, by any reckoning, had already terminated.

## CONCLUSION

¶ 24 For the foregoing reasons, we affirm the trial court's judgment.

CONCURRING: G. MURRAY SNOW and MAURICE PORTLEY, Judges.