219 P.3d 280

**STATE of Arizona, Appellee,**

v.

**Albert Charles LATHAM, Jr., Appellant.**

**No. 1 CA–CR 08–0698.**

Court of Appeals of Arizona,
Division 1, Department A.

Oct. 29, 2009.

---

and return with the money for Latham. The wife did so. Latham argues this evidence is insufficient to support the jury's finding that he was guilty of kidnapping the wife. We disagree and affirm Latham's convictions and resulting sentences.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 A few days before the events described above, Latham came to the home of J. (the husband) and S. (his wife) and asked to speak to J. privately.[1] Latham played for J. a tape recording in which he outlined his belief that J. owed him money from a failed real estate transaction several years prior. After listening to the tape for about 20 minutes, J. told Latham "to get the hell out." As he left the home, Latham told J. that he would return to "get his money" and "settle this."

¶ 3 Five days later, while S. was away from the house, J. heard a noise in the garage. There he found Latham, who without saying anything walked into the house. Latham carried a black zippered satchel that J. recognized as the case in which Latham stored a semiautomatic pistol. Latham kept one hand inside the satchel and said he was there "to settle this up today one way or another."

¶ 4 The two sat down at the kitchen table and Latham pulled a sheet of paper from his pocket on which he had written the amount of money he claimed J. owed him—a total of $300,000—and various installment amounts and dates for payment. Latham then demanded $10,000 in cash or he would "end this thing today." When J. replied that he did not have that amount in cash, Latham pulled out his pistol, pointed it at J., racked it to chamber a round and said if he did not receive the money that day he would shoot J., then himself. J. responded that he would have to get the money from his credit union. The two drove to the credit union, but J. was unable to cash a $10,000 check at the drive-through window. Rather than permit J. to get out of the car and go into the branch, Latham ordered J. to drive back home to

Terry Goddard, Attorney General by Kent E. Cattani, Chief Counsel Criminal Appeals/Capital Litigation Section, Joseph T. Maziarz, Assistant Attorney General, Phoenix, Attorneys for Appellee.

Janelle A. McEachern, Chandler, Attorney for Appellant.

## OPINION

JOHNSEN, Judge.

¶ 1 Sitting at another man's kitchen table with a loaded pistol in his lap, Albert Charles Latham, Jr. threatened to kill the man if he did not give Latham $10,000. When the man's wife came home a short while later, the man relayed Latham's threat and told his wife to go to their credit union, cash a check

---

1. We view the facts in the light most favorable to sustaining the jury's verdicts. *State v. Haight-Gyuro*, 218 Ariz. 356, 357, ¶ 2, 186 P.3d 33, 34 (App.2008).

wait for S. to return so she could go cash the check.

¶ 5 The two returned to J. and S.'s home and waited 30 minutes for S. to return. When S. came home, she saw J. and Latham sitting in the kitchen and the black satchel in Latham's lap. S. asked what was happening; Latham remained silent while J. answered, "Al has [a] gun in his lap, and he threatened to kill me if he doesn't get money." J. handed S. the $10,000 check he had written and asked her to go the credit union to cash it. S. left, went to the credit union, cashed the check and returned with $10,000 in an envelope and threw it on the table between J. and Latham. Latham took the envelope and departed.

¶ 6 After his capture, Latham was charged with Count 1, armed robbery; Count 2, kidnapping of J.; Count 3, kidnapping of S.; and Count 4, burglary in the first degree. At trial, S. testified that when she entered the kitchen, saw J. with Latham and heard from J. of Latham's threat, she believed Latham had a gun, felt "pretty scared" and believed Latham posed a threat. She also explained to the jury that she did not call the police after she departed for the credit union because she was afraid if Latham heard sirens he would shoot her husband.

¶ 7 After the close of the State's case-in-chief, Latham moved for a judgment of acquittal on all charges pursuant to Arizona Rule of Criminal Procedure ("Rule") 20, but argued specifically for dismissal of the kidnapping charge as to S., contending there was no evidence he had restrained her. After the superior court denied the motion, the jury found Latham guilty of armed robbery pursuant to Arizona Revised Statutes ("A.R.S.") sections 13–1902 (2001) and –1904 (2001), both counts of kidnapping in violation of A.R.S. § 13–1304 (Supp.2008), and burglary in the second degree, A.R.S. § 13–1507 (2001), a lesser-included offense of burglary in the first degree.[2] The superior court sentenced Latham to three concurrent five-year prison terms on the armed robbery and kid-

napping convictions and five years' probation on the burglary conviction.

¶ 8 Latham timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 12–120.21(A)(1) (2003), 13–4031 (2001) and –4033(A)(1) (Supp. 2008).

## DISCUSSION

### A. Standard of Review.

¶ 9 We review the superior court's denial of a motion for judgment of acquittal for an abuse of discretion. *State v. McCurdy*, 216 Ariz. 567, 573, ¶ 14, 169 P.3d 931, 937 (App. 2007). "A judgment of acquittal is appropriate only when there is no substantial evidence to prove each element of the offense and support the conviction." *Id.* "Substantial evidence is that which reasonable persons could accept as sufficient to support a guilty verdict beyond a reasonable doubt." *State v. Davolt*, 207 Ariz. 191, 212, ¶ 87, 84 P.3d 456, 477 (2004) (citation omitted). On review, "we view the evidence in the light most favorable to sustaining the verdict and resolve all reasonable inferences against the defendant." *State v. Mincey*, 141 Ariz. 425, 432, 687 P.2d 1180, 1187 (1984). When the superior court rules on a Rule 20 motion based on a particular statutory interpretation, however, we review the court's ruling de novo. *State v. Henry*, 205 Ariz. 229, 233, ¶ 13, 68 P.3d 455, 459 (App.2003).

### B. The Superior Court's Denial of Latham's Motion for Judgment of Acquittal.

¶ 10 On appeal, Latham challenges only his conviction on the second of the two kidnapping counts. The applicable portion of the statute under which Latham was convicted provides that "[a] person commits kidnapping by knowingly restraining another person with the intent to ... aid in the commission of a felony." A.R.S. § 13–1304(A)(3). "Restrain," in turn, means

> to restrict a person's movements without consent, without legal authority, and in a

---

**2.** Although some of the relevant statutes were amended after the date of Latham's offenses, the revisions are immaterial to the disposition of this

appeal. Thus, we cite to the current published version of the statutes.

manner which interferes substantially with such person's liberty, by either moving such person from one place to another or by confining such person. Restraint is without consent if it is accomplished by: [ ] Physical force, intimidation or deception. A.R.S. § 13–1301(2)(a) (2001). Latham contends the State offered no substantial evidence that he restrained S. within the meaning of the statute and, therefore, the superior court erred in denying his motion for judgment of acquittal on the second kidnapping charge.

¶ 11 Under the statute, the crime of kidnapping requires that the accused restrict the movements of another "in a manner which interferes substantially with such person's liberty." *Id.; see also State v. Styers*, 177 Ariz. 104, 111, 865 P.2d 765, 772 (1993). One interferes substantially with another's liberty "by either moving such person from one place to another or by confining such person." A.R.S. § 13–1301(2); *see also Styers*, 177 Ariz. at 111, 865 P.2d at 772 ("[D]efendant interfered with [the victim's] liberty by moving him from his apartment to various drugstores, a pizza restaurant, and finally to a desert wash in northwest Phoenix.").

¶ 12 The theory of the prosecution was that when J. told his wife that Latham had threatened to kill him unless he was paid and directed her to go to the credit union, cash the check and return, Latham caused S. to move from one place to another by intimidation. Latham contends he did not cause S. to move anywhere; he argues that she left to cash the check because J. told her to, not because of anything he, Latham, said to her. We disagree. When J. relayed the death threat from Latham, who was sitting across the table with a gun in his lap, and told his wife to go cash the check, for our purposes it was as if Latham had made the threat and issued the order himself.

¶ 13 Latham also argues that he did not commit kidnapping because he did not "move" S. within the meaning of the statute. To be sure, in the typical kidnap case the accused usually has taken the victim from one place to another. *See, e.g., State v. Bearup*, 221 Ariz. 163, 211 P.3d 684 (2009) (victim transported in car); *State v. Martinez*, 218 Ariz. 421, 189 P.3d 348 (2008) (same); *Styers*, 177 Ariz. 104, 865 P.2d 765 (same). In this case, Latham did not force S. into a car and drive with her to the credit union; at most, for purposes of this charge, by the threat he uttered to S.'s husband, he caused her to decide to move from the home to the credit union and back. Thus, Latham presents the question whether *causing a victim to move* from one place to another is *"moving"* the victim from one place to another within the meaning of A.R.S. § 13–1301(2)(a).

¶ 14 In interpreting a statute, we first look to the words of the statute. *State ex rel. Thomas v. Contes*, 216 Ariz. 525, 527, ¶ 6, 169 P.3d 115, 117 (App.2007). "If the statutory language is clear, we ascribe plain meaning to its terms." *Id.* We turn to other factors only if the language is unclear. *Norgord v. State ex rel. Berning*, 201 Ariz. 228, 230, ¶ 7, 33 P.3d 1166, 1168 (App.2001).

¶ 15 To satisfy the plain meaning of the kidnapping statute's restraint requirement, the defendant either must move the victim from place to place or confine the victim. We take Latham's argument to be that the requirement that the accused "mov[e] [the victim] from one place to another" suggests that the accused must accompany the victim or go someplace with him or her in some fashion. *See* A.R.S. § 13–1301(2). Indeed, under the language of the statute, it might be argued that the victim must be the object of an act by the accused. That is, the accused must "move" the victim by, e.g., taking, carrying or driving the victim from one place to another.

¶ 16 In this case, while Latham did not take or carry or drive S. from one place to another, by his threat he caused her to move by herself from one place to another. The conclusion that the accused need not *transport* the victim to be guilty of kidnapping is supported by the language of the statute providing that the accused need not use physical force on the victim. To the contrary, the absence-of-consent element of kidnapping does not require use of physical force but may be satisfied when the accused

has accomplished the crime by use of intimidation or deception. A.R.S. § 13–1301(2)(a).[3]

¶ 17 Neither Latham nor the State has cited any case in which kidnapping is alleged based on a threat that caused the victim to move by himself or herself some distance away from the accused and then return. Nor have we located such a case. Nevertheless, the authorities make plain that a kidnapping may occur when the accused directs the victim to move but does not accompany the victim to the designated location. *See, e.g., State v. Rabon,* 115 Ariz. 45, 563 P.2d 300 (App.1977) (accused ordered store clerk and customers into a separate room, told them to close the door, then fled); *see also People v. Corcoran,* 143 Cal.App.4th 272, 48 Cal.Rptr.3d 851 (2006) (defendant forced attempted robbery victims at gunpoint into small enclosed office); *People v. Owens,* 97 P.3d 227 (Colo.App.2004) (one victim was called by another victim to come from grill area of restaurant and first victim ended up in office with defendant); *Ferguson v. State,* 533 So.2d 763 (Fla.1988) (restaurant robber forced employees into restroom and told them to stay put); *Woodson v. State,* 273 Ga. 557, 544 S.E.2d 431 (2001) (victim fled into bathroom, exited it, then knife-wielding perpetrator told her to go into another room); *Chapman v. State,* 556 N.E.2d 927 (Ind.1990) (bank robber pointed gun at teller, told her to get more money and motioned toward the vault); *State v. Weigel,* 228 Kan. 194, 612 P.2d 636 (1980) (bank robber forced employees into vault and attempted to lock vault door).

¶ 18 Cases from other jurisdictions teach that a less significant movement by the victim may not support a kidnapping conviction. *See, e.g., Walker v. State,* 604 So.2d 475 (Fla.1992) (no kidnapping occurred when defendant, after taking money from cash register, ordered store's occupants to the back of the store and then fled); *Rayshad v. State,* 295 Ga.App. 29, 670 S.E.2d 849 (2008) (act of forcing victim, who was standing, to lie on floor does not satisfy kidnapping statute); *State v. Kemp,* 30 Kan.App.2d 657, 46 P.3d 31

(2002) (shepherding victims together for ease of robbery insufficient to support kidnapping conviction); *State v. Wolleat,* 338 Or. 469, 111 P.3d 1131, 1135 (2005) ("Moving a victim from one room to another while committing another crime does not constitute moving the victim a substantial distance."); *State v. Reyes–Mauro,* 217 Or.App. 315, 175 P.3d 998 (2007) (although moving bar patrons from outside to inside constitutes kidnapping, ordering customer from front of store to back office does not).

■ ¶ 19 The authorities obviously are not altogether consistent when it comes to whether conduct causing a victim to move only a short distance constitutes kidnapping. But we are not required in this case to determine the distance that the accused must have "moved" a victim to be guilty of kidnapping under Arizona law. "Movement" sufficient to support Latham's kidnapping conviction occurred when, by his threat, he caused S. to leave the house, get into her car and head for the credit union. *See State v. Williams,* 111 Ariz. 222, 224, 526 P.2d 1244, 1246 (1974) ("The essence of kidnap is not the distance the victim is transported but the unlawful compulsion against the will to go somewhere."); *Rabon,* 115 Ariz. at 47, 563 P.2d at 302 (affirming conviction even though victims were compelled to move only a short distance).

■ ¶ 20 Kidnapping is accomplished when a defendant's threat or intimidation causes a victim to move from one place to another against her will. Whether Latham's threat to kill J. compelled S. to leave the house against her will was a question for the jury that it resolved against Latham. Latham argues the evidence showed that, having left her home for the credit union, S. could have called the police, sought help at the credit union or otherwise not returned home. But the choices S. made after she headed off in the direction of the credit union are not relevant; the evidence that Latham's threat caused her to walk out the door of her home and drive away was sufficient to support Latham's kidnapping conviction. Ac-

---

**3.** The "restraint" required for kidnapping also may occur when one confines the victim without consent. A.R.S. § 13–1301(2). In such cases, of course, the crime occurs absent any movement by the victim.

cordingly, because there was substantial evidence that Latham kidnapped S. when his threat to kill her husband caused her to move from one place to another, we conclude the superior court acted within its discretion in denying Latham's motion for acquittal pursuant to Rule 20.

## CONCLUSION

¶ 21 Latham's convictions and sentences are affirmed.

CONCURRING: MAURICE PORTLEY, and DANIEL A. BARKER, Judges.