J-S39035-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
           :             PENNSYLVANIA
           :
        v.          :
           :
           :
TOMAS MIGUELE MATTHEWS    :
           :
      Appellant    :       No. 1597 MDA 2017

Appeal from the Judgment of Sentence August 4, 2017
in the Court of Common Pleas of Lancaster County,
Criminal Division at No(s):  CP-36-CR-0003836-2015

BEFORE:  STABILE, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:         **FILED AUGUST 22, 2018**

Tomas Miguele Matthews ("Matthews") appeals from the judgment of sentence imposed after a jury convicted him of two counts each of unlawful restraint and simple assault, and one count each of intimidation of a witness, aggravated assault, theft by unlawful taking, terroristic threats, rape, sexual assault, and firearms not to be carried without a license.[1]  We affirm.

The trial court set forth the factual and procedural history underlying this appeal in its Opinion, which we incorporate as though fully set forth herein.  *See* Trial Court Opinion, 12/7/17, at 1-6.

Matthews now presents the following questions for our review:

---

[1] *See* 18 Pa.C.S.A. §§ 2902(a)(1) and (a)(2), 2701(a)(1) and (a)(3), 4952(a)(1), 2702(a)(1), 3921(a), 2706(a)(1), 3121(a)(2), 3124.1, 6106(a)(1).

1. Did the trial court err in admitting the hearsay statements of J[.]R[.] [(hereinafter "the victim")] to Katherine Orell Mummey [("Mummey")[2]], as these statements were not made for medical diagnosis or treatment, but for purposes of evidence collection?

2. Was [] Matthews'[s] conviction for intimidation of a witness, graded as a first[-]degree felony, illegal, where the verdict slip contained the question: "If guilty, do you find the defendant used force, violence or threatened to employ force or violence upon the victim or another person?", but neither the verdict slip nor any instructions given by the court informed the jury that they were required to find this extra factor, which is an element of the offense, *beyond a reasonable doubt*?

3. Was [] Matthews improperly sentenced as a second strike offender, pursuant to 42 Pa.C.S. § 9714, where his [prior] conviction for kidnapping in Arizona was not a previous crime of violence[,] as set forth in Section 9714?

Brief for Appellant at 8 (footnote added, emphasis in original).

In his first issue, Matthews contends that the trial court committed reversible error when it admitted, over his objection, prejudicial hearsay[3]

_____

[2] Mummey, a registered nurse, performed a sexual assault forensic examination ("SAFE exam") on the victim at the emergency room.

[3] *See* Pa.R.E. 801(c) (stating that "'[h]earsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."); *see also* Pa.R.E. 802 (providing that hearsay is *per se* inadmissible except as provided in the Pennsylvania Rules of Evidence or by statute). Pennsylvania Rule of Evidence 803 enumerates various exceptions to the general inadmissibility of hearsay testimony. ***Commonwealth v. Belknap***, 105 A.3d 7, 11 (Pa. Super. 2014).

statements that the victim made to Mummey about the assault during the SAFE exam.[4] *See id.* at 17-23.

Our standard of review concerning a challenge to the admissibility of evidence is as follows: "[I]n reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law. To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." *Commonwealth v. Schley*, 136 A.3d 511, 515 (Pa. Super. 2016) (citation and ellipses omitted).

Here, the trial court admitted the victim's out-of-court statements to Mummey under Pa.R.E. 803(4), which excludes from the hearsay bar statements made for purposes of medical diagnosis and treatment (the "medical treatment exception"). This exception is met where the statement

> (A) is made for – and is reasonably pertinent to – medical treatment or diagnosis in contemplation of treatment; and

> (B) describes medical history, past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof, insofar as reasonably pertinent to treatment, or diagnosis in contemplation of treatment.

---

[4] In these statements, the victim essentially disclosed that she had been beaten and raped. *See* N.T. (trial), 1/23-27/17, at 305-06. Though the trial court ruled that the victim's statements in question were admissible, it precluded any mention of the identity of the perpetrator who had assaulted the victim. *Id.* at 299; *see also id.* at 305-06.

Pa.R.E. 803(4); *see also Belknap*, 105 A.3d at 11 (stating that "[t]he following two requirements must be satisfied in order for a statement to qualify as a medical treatment exception: (1) the statement must be made for the purpose of receiving medical treatment; and (2) the statement must be necessary and proper for diagnosis and treatment.").

Matthews contends that the victim's statements to Mummey during the SAFE exam were not admissible under the medical treatment exception "because [] Mummey did not interact with [the victim] for the purpose of medical treatment and diagnosis[.]" Brief for Appellant at 21 (citing Pa.R.E. 803(4)(A)). According to Matthews, "[b]y her own admission, [] Mummey's reason for seeing [the victim] was to exam[ine] her for injury, document them and collect evidence, and [Mummey] saw [the victim] only after she had been medically cleared by treating personnel." Brief for Appellant at 21 (citing, *inter alia*, N.T., 1/23-27/17, at 327-28 (wherein Mummey testified that part of her job as a SAFE nurse required her to "collect any evidence and examine the patient for any injuries.")). Matthews further points out Mummey's testimony that she could not prescribe treatment for the victim's injuries. Brief for Appellant at 21.

In its Opinion, the trial court addressed Matthews's claim, summarized Mummey's relevant trial testimony, and opined, *inter alia*, that the victim's statements in question were properly admitted under the medical treatment exception, as they "were made in the emergency room to medical staff for the

purpose of medical diagnosis and treatment." Trial Court Opinion, 12/7/17, at 8. Because we agree with the trial court's rationale and determination, we affirm on this basis in rejecting Matthews's first issue, *see id.* at 7-8, with the following addendum.

We are unpersuaded by Matthews's claim that the victim's statements were not "made for – and [] reasonably pertinent to – medical treatment or diagnosis in contemplation of treatment." Pa.R.E. 803(4)(A). At the time of these statements, the victim was still in the emergency room and Mummey was tasked with examining and evaluating the victim's injuries. Mummey testified that it was part of her job, in performing a SAFE exam, to "interview the patient and ask them what exactly happened," and "take quotes from them and just kind of write exactly what they're telling me." N.T., 1/23-27/17, at 302. The comment to Rule 803(4)(A) explains that "[s]tatements as to causation[, *e.g.*, how a victim sustained the injury,] have been held to be admissible." Pa.R.E. 803(4), *cmt.*; *see also Commonwealth v. Fink*, 791 A.2d 1235, 1247 (Pa. Super. 2002) (stating that "a statement comes within [the medical treatment] exception when … [it] relat[es] to the cause of the injury … and … as to how the person sustained the injuries[.]"). Moreover, contrary to Matthews's urging, for the purpose of meeting the medical treatment exception, it is irrelevant that Mummey, a non-physician, was not authorized to "prescribe" treatment. *See, e.g.,* Pa.R.E. 803(4), *cmt.* (stating that "[t]his rule is not limited to statements made to physicians. Statements

to a nurse have been held to be admissible.").[5] Accordingly, the trial court did not err in admitting the evidence in question.

In his second issue, Matthews argues that his conviction of intimidation of a witness, graded as a first-degree felony, is illegal and "must be reduced to a conviction for intimidation of [a] witness, graded as a second-degree misdemeanor."[6] Brief for Appellant at 30. Specifically, Matthews contends that the conviction is illegal,

> where the verdict slip contained the question: "If guilty, do you find the defendant used force, violence or threatened to employ force or violence upon the victim or another person?" [(*i.e.*, an element contained in the intimidation of a witness statute regarding the grading of the offense, *see* 18 Pa.C.S.A. § 4952(b)(1)(i))], but neither the verdict slip nor any instructions given by the court informed the jury that they were required to find this extra factor, which is an element of the offense, *beyond a reasonable doubt*.

*Id.* at 24 (emphasis in original). According to Matthews, because "the jury was never informed that the use or threat of force or violence was an element

---

[5] Further, Mummey's statement that she could only begin her examination of the victim after the victim was "cleared" as being stable and ready for a SAFE exam by emergency room trauma physicians is unavailing to Matthews. Relatedly, Matthews fails to acknowledge Mummey's testimony that it wasn't until *after* Mummey had completed the SAFE exam that the victim's physicians finally cleared her so that she could receive the "sexually transmitted disease prophylactic medication" that is regularly-prescribed in connection with sexual assault incidents. *See* N.T., 1/23-27/17, at 325-26.

[6] The provision governing grading of the offense of intimidation of a witness, 18 Pa.C.S.A. § 4952(b), is fully set forth in the trial court's Opinion, which we incorporate herein by reference. *See* Trial Court Opinion, 12/7/17, at 9.

of the offen[s]e[,] [] they had no way of knowing that they had to answer the question on the verdict slip beyond a reasonable doubt[.]" *Id.* at 28.

"The determination as to whether the trial court imposed an illegal sentence is a question of law; our standard of review in cases dealing with questions of law is plenary." *Commonwealth v. Atanasio*, 997 A.2d 1181, 1183 (Pa. Super. 2010) (citation and brackets omitted)). Further, this Court has explained that

> [t]he defense has an absolute right to have the jury instructed as to the quantum of proof required to establish guilt. To that end, the trial court must provide the jury with a positive instruction fully and accurately defining that burden, *i.e.*, "beyond a reasonable doubt." *See Sullivan v. Louisiana*, 508 U.S. 275, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993) (a constitutionally deficient jury instruction in a criminal case as to the definition of reasonable doubt, for purposes of the prosecution's burden of proving guilt beyond a reasonable doubt, is not amenable to harmless error analysis and will always invalidate a conviction).

*Commonwealth v. Clark*, 683 A.2d 901, 906 (Pa. Super. 1996) (some internal citations omitted).

Initially, we acknowledge that Matthews's counsel never objected at trial to the trial court's jury instruction concerning this offense or the verdict slip that was given to the jury. *See* Pa.R.Crim.P. 647(C) (providing that "[n]o portions of the charge[,] nor omissions from the charge[,] may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate."); *Commonwealth v. Baumhammers*, 960 A.2d 59, 73 (Pa. 2008) (emphasizing that "it is axiomatic that issues are preserved when objections are made timely to the error or offense[,]" and "an absence

- 7 -

of contemporaneous objections renders an appellant's claims waived." (citations and quotation marks omitted)); *see also Commonwealth v. Matty*, 619 A.2d 1383, 1387 (Pa. Super. 1993) (holding that the defendant's "failure to contemporaneously object to the jury instructions or the verdict slip … operates as a waiver."). Nevertheless, as Matthews's issue implicates the legality of his sentence, we will reach its merits. *See Commonwealth v. Rivera*, 154 A.3d 370, 379 (Pa. Super. 2017) (*en banc*) (observing that a claim that implicates the legality of a sentence cannot be waived on appeal).

In its Opinion, the trial court addressed and expounded upon Matthews's challenge to the legality of his intimidation of a witness conviction, adeptly set forth the relevant law, and determined that the conviction was lawful and properly graded as a first-degree felony. *See* Trial Court Opinion, 12/7/17, at 8-11. The trial court's sound analysis is supported by the record and the law, and we agree with its determination. Therefore, we affirm on this basis in rejecting Matthews's second issue. *See id.*

In his third and final issue, Matthews contends that the trial court imposed an illegal sentence when it sentenced him as a "second-strike" offender pursuant to 42 Pa.C.S.A. § 9714. *See* Brief for Appellant at 31-43. According to Matthews, his prior 2010 conviction, in Arizona, for kidnapping was not a "crime of violence," as that term is defined in section 9714, and thus, he was not subject to ten-year mandatory minimum sentences, under section 9714, for his convictions of aggravated assault and rape. *Id.* at 32-

33, 38-42. Matthews contends that there is an "appreciable difference" between Arizona's and Pennsylvania's kidnapping statutes, which are not "substantially identical in nature and definition." *See id.* at 40-42. Specifically, Matthews argues that although the offense of kidnapping, in Pennsylvania, is defined as a "crime of violence,"[7] Arizona's kidnapping statute is not equivalent to Pennsylvania's kidnapping statute, as the latter "requires elements of removing another a substantial distance, or confining another for a substantial period of time in a place of isolation." *Id.* at 42; *see also id.* (asserting that Arizona's kidnapping statute is "more general" than Pennsylvania's kidnapping statute).

In its Opinion, the trial court thoroughly addressed Matthews's claim; thoroughly set forth (a) the language of section 9714, (b) the kidnapping statutes of Pennsylvania and Arizona, and (c) the relevant associated law; and determined that the court properly applied section 9714 to this case, as the elements of the kidnapping statutes from both states are equivalent. *See* Trial Court Opinion, 12/7/17, at 11-18. We agree with the cogent rationale and determination of the trial court, and therefore affirm on this basis in concluding that Matthews's final issue entitles him to no relief. *See id.*

Accordingly, we affirm Matthews's judgment of sentence.

Judgment of sentence affirmed.

---

[7] *See* 42 Pa.C.S.A. § 9714(g).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/22/2018

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
C R I M I N A L

COMMONWEALTH OF PENNSYLVANIA :

           v.           :        No. 3836 - 2015(B)

TOMAS MIGUELE MATTHEWS   :

## OPINION SUR PA.R.A.P. 1925(a)

BY:    ASHWORTH, J., DECEMBER 7, 2017

Tomas Miguele Matthews has filed an appeal from his judgment of sentence imposed on August 4, 2017, and finalized by the denial of his post sentence motion by Order and Opinion dated September 14, 2017. This opinion is written pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure and, for the following reasons, this Court requests that this appeal be dismissed.

## I.    Background

On June 7, 2015, Matthews was charged at Information No. 3836-2015 with committing 15 offenses[1] related to the beating, strangulation, oral and anal rape, and sexual assault of his girlfriend, J.R., over a nine-hour period, while threatening her with

---

[1] Aggravated assault, 18 Pa.C.S.A. § 2702(A)(1), theft by unlawful taking – movable property, 18 Pa.C.S.A. § 3921(a), terroristic threats, 18 Pa.C.S.A. § 2706(A)(1), unlawful restraint/risk of serious injury, 18 Pa.C.S.A. § 2902(A)(1), intimidation of witness or victim, 18 Pa.C.S.A. § 4952(A)(1), simple assault, 18 Pa.C.S.A. § 2701(A)(1), rape by forcible compulsion, 18 Pa.C.S.A. § 3121(A)(1), rape by threat of forcible compulsion, 18 Pa.C.S.A. § 3121(A)(2), sexual assault, 18 Pa.C.S.A. § 3124.1, involuntary deviate sexual intercourse by forcible compulsion, 18 Pa.C.S.A. § 3123(A)(1), involuntary deviate sexual intercourse by threat of forcible compulsion, 18 Pa.C.S.A. § 3123(A)(2), and unlawful restraint/involuntary servitude, 18 Pa.C.S.A. § 2902(a)(2).

APPENDIX C

a gun in her home in Columbia. By Amended Information, and at the direction of the Court, the charge of Person Not to Possess Firearm, 18 Pa.C.S.A. § 6105(a)(1), was severed from the main body of the case, to be tried before a separate jury.[2] This charge, originally placed at Count 3, was moved to Count 15 in the Amended Information, as filed.

On January 24, 2017, Matthews went to trial on Counts 1 through 14. Matthews was represented at trial by Assistant Public Defender Douglas A. Conrad. On January 27, 2017, Matthews was convicted of 11 of the 14 offenses. Sentencing was deferred pending completion of a pre-sentence investigation report. Moreover, having been found guilty of rape by threat of forcible compulsion and sexual assault, Matthews was ordered to undergo an assessment by the Pennsylvania Sexual Offender Assessment Board (SOAB).[3] *See* 42 Pa.C.S.A. § 9799.24(a) ("a court shall order an individual convicted of a sexually violent offense to be assessed by the board"); 42 Pa.C.S.A. § 9799.12 (defining "sexually violent offense"). On April 10, 2017, the Commonwealth received notice from the SOAB that Matthews did not meet the criteria of a sexually violent predator.

---

[2]This charge of persons not to possess a firearm was severed because to allow it to be tried with the remaining offenses would permit the jury to hear prejudicial evidence that Matthews was previously convicted of a crime. *See* **Commonwealth v. Jones**, 858 A.2d 1198, 1207-08 (Pa. Super. 2004).

[3]The SOAB is "composed of psychiatrists, psychologists and criminal justice experts, each of whom is an expert in the field of the behavior and treatment of sexual offenders." 42 Pa.C.S.A. § 9799.35(a).

2

The Commonwealth gave notice on April 28, 2017, of its intent to seek a mandatory sentence of not less than 25 years' confinement and/or a sentence of life imprisonment without parole on the charges of rape by forcible compulsion, sexual assault and aggravated assault, asserting that Matthews had three prior crimes of violence under 42 Pa.C.S.A. § 9714(g). Specifically, Matthews had convictions in Arizona in 2004 and 2010 for aggravated robbery, kidnapping, and aggravated assault. Following the filing of briefs on this sentencing issue, the Commonwealth conceded that only one of the prior three convictions, kidnapping, was equivalent to a "crime of violence" under Pennsylvania law. This Court agreed. Therefore, Matthews was subject to a mandatory minimum sentence of at least ten years, as required by Section 9714, on the charges of rape by forcible compulsion, sexual assault and aggravated assault. Sentencing on the 11 convictions from the January 24, 2017, trial was deferred, however, pending the result in the second trial on the firearms charge.

On May 24, 2017,[4] Matthews filed a *pro se* motion to proceed as his own attorney in the second trial. Following a **Grazier**[5] Hearing on July 13, 2017, I determined that Matthews' waiver of counsel was knowing, intelligent and voluntary

---

[4]Although Matthews' motion was time-stamped and docketed in the Clerk of Courts on May 26, 2017, the mailing envelope included in the record with the motion reflects a post-mark date of May 24, 2017. Pursuant to the prisoner mailbox rule, a *pro se* document is considered filed on the date it was delivered to prison authorities for mailing. *See* **Commonwealth v. Crawford**, 17 A.3d 1279, 1281 (Pa. Super. 2011). Applying the prisoner mailbox rule, I consider May 24, 2017, as the date of filing of Matthews' motion.

[5]**Commonwealth v. Grazier**, 552 Pa. 9, 713 A.2d 81 (1988) (requiring, when waiver of right to counsel is sought, an on-the-record determination that waiver is knowing, intelligent and voluntary).

and, therefore, granted Matthews' motion. Attorney Conrad was appointed standby counsel.

Matthews proceeded to trial on July 24, 2017, on Count 15, Person Not to Possess Firearms charge. Matthews represented himself at trial and he was convicted by a jury of this crime on July 25, 2017. An updated pre-sentence investigation report was ordered.

Matthews stood for sentencing on all charges on August 4, 2017. At that time, Matthews received an aggregate sentence of 33 to 70 years' incarceration, plus restitution in the amount of $9,387.07, and fines and costs.[6] Matthews was represented at the sentencing on all counts by Attorney Conrad.

Matthews filed a pro se notice of appeal from his judgment of sentence on August 5, 2017.[7] The Clerk of Court accepted the pro se filing, but because Matthews

---

[6]Matthews received the following sentence: Count 1, aggravated assault, 10 to 20 years' incarceration; Count 2, theft by unlawful taking, 4 to 8 years' incarceration; Count 3, terroristic threats, 1-1/2 to 3 years' incarceration; Count 4, unlawful restraint, 1-1/2 to 3 years' incarceration; Count 5, intimidation of a witness/victim, 8 to 20 years' incarceration; Count 6, simple assault, merged with Count 1; Count 7, simple assault, merged with Count 1; Count 9, rape by forcible compulsion, 10 to 20 years' incarceration; Count 10, sexual assault, merged with Count 1; Count 13, unlawful restraint, 1-1/2 to 3 years' incarceration; Count 14, firearm not to be carried without a license, 3-1/2 to 7 years' incarceration; and Count 15, person not to possess a firearm, 5 to 10 years' incarceration. Count 1 was concurrent to Count 9 and consecutive to all counts. Count 3 was concurrent to Counts 4 and 13 and consecutive to all counts. Count 4 was concurrent to Counts 3 and 13, and consecutive to all other counts. Count 9 was concurrent with Count 1 and consecutive to all other counts. Count 13 was concurrent to Counts 3 and 4, and consecutive to all other counts. Count 14 was concurrent to Count 15 and consecutive to all other counts. Count 15 was concurrent to Count 14 and consecutive to all other counts.

[7]Although Matthews's notice was time-stamped and docketed in the Clerk of Courts on August 7, 2017, the mailing envelope included in the record with the motion reflects a post-mark date of August 5, 2017. Applying the prisoner mailbox rule, the filing date is August 5, 2017. See **Crawford**, supra.

was represented by counsel at the time, the Clerk notified Matthews by letter dated August 9, 2017, that it was obligated by Pa.R.Crim.P. 576(A)(4)[8] to time stamp the pleading, make a docket entry reflecting the date of receipt, place the document in the criminal case file, and forward a copy of the *pro se* pleading to the attorney of record, Douglas Conrad. However, the copy of the *pro se* pleading was sent by the Clerk's Office to private criminal defense attorney Douglas Cody and not Assistant Public Defender Douglas Conrad.

Unaware that Matthews had filed a *pro se* notice of appeal, Attorney Conrad filed a timely post sentence motion to modify sentence on August 11, 2017. In the motion, Matthews claimed the Court improperly imposed mandatory sentences under 42 Pa.C.S.A. § 9714 to both the aggravated assault and the rape charges in the same Information. *See* Post Sentence Motion at ¶¶ 2-3. Matthews further claimed the Court failed to give adequate consideration to various factors in the case, including Matthews' "significant history of mental health diagnoses," his acceptance of responsibility for "the majority of the charges," and his cooperation with the police. Id. at ¶ 4. Finally, Matthews argued that the imposition of the aggregate sentence of 33 to 70 years' incarceration was "manifestly excessive and constituted an abuse of the Court's

---

[8]Rule 576 of the Pennsylvania Rules of Criminal Procedure provides in relevant part:
In any case in which a defendant is represented by an attorney, if the defendant submits for filing a written motion, notice, or document that has not been signed by the defendant's attorney, the clerk of courts shall accept it for filing, time stamp it with the date of receipt and make a docket entry reflecting the date of receipt, and place the document in the criminal case file. A copy of the time stamped document shall be forwarded to the defendant's attorney and the attorney for the Commonwealth within 10 days of receipt.
Pa.R.Crim.P. 576(A)(4).

5

discretion." Id. at ¶ 5. By Opinion and Order dated September 14, 2017, Matthews' post sentence motion was denied.

On October 13, 2017, Matthews filed a timely notice of appeal to the Superior Court of Pennsylvania from his judgment of sentence. *See* 1597 MDA 2017. Pursuant to this Court's directive, Matthews filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) which raises the following issues: (1) the court erred in admitting certain hearsay statements; (2) Matthews' conviction for intimidation of a witness was illegal where the jury was not instructed that an element of the offense was one of the factors set forth in 18 Pa.C.S.A. § 4952(b)(1); and (3) Matthews was improperly sentenced as a second strike offender pursuant to 42 Pa.C.S.A. § 9714.

## II. Discussion

### A. Witness Hearsay Statements

Initially, Matthews asserts that the Court erred in admitting the victim's hearsay statements to Katie Orell Mummey, the nurse who performed a sexual assault forensic examination (SAFE) on the victim in the emergency room. Generally, an out-of-court statement is inadmissible at trial unless it falls into one of the exceptions to the hearsay rule. **Commonwealth v. Charlton**, 902 A.2d 554, 559 (Pa. Super. 2006). The victim's statements in this case were admitted under the medical diagnosis or treatment hearsay exception. This exception exists when the statement:

(A) is made for – and is reasonably pertinent to – medical treatment or diagnosis in contemplation of treatment; and

6

(B) describes medical history, past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof, insofar as reasonably pertinent to treatment, or diagnosis in contemplation of treatment.

Pa.R.E. 803(4). *See also* **Commonwealth v. Belknap**, 105 A.3d 7, 11 (Pa. Super. 2014). Matthews claims, however, that these statements were not made for medical diagnosis or treatment, but rather for purposes of evidence collection and, thus, were inadmissible.

At trial, the Commonwealth presented Nurse Mummey as a witness in its case in chief. Nurse Mummey testified that her job as a SAFE nurse is twofold: she conducts a physical examination of the patient to identify, document and treat injuries, and then she collects any evidence related to those injuries. Notes of Testimony (N.T.), Trial at 303. This examination properly entails obtaining a history from the victim of the events leading to her visit, to assist in looking for any vaginal, penile or anal injuries, as well as non-genital injuries. Id. at 303, 314.

Nurse Mummey testified about the injuries she saw on the victim, as well as the fact that she performed a sexual assault kit on the victim consistent with her SAFE training.[9] N.T., Trial at 304-27; Commonwealth Exhibit No. 23. The Court, over defense counsel's objection, further allowed Nurse Mummey to testify as to the information that the victim provided to her regarding the attack in order to assist in the medical examination and treatment. Id. at 299, 309, 312-13, 321.

---

[9]SAFE nurses use a sexual assault kit to proceed with a particular protocol for gathering evidence from patients who have indicated that they have been sexually assaulted. N.T., Trial at 302-03.

The admission of the victim's out-of-court statements was proper as the victim in this case was experiencing a medical emergency. The victim's statements were made in the emergency room to medical staff for the purpose of medical diagnosis and treatment. As such, there was no violation of the hearsay rule by the admission of the victim's statements to Nurse Mummey, pursuant to Rule of Evidence 803(4).

Assuming, *arguendo*, that the victim's statements were improperly admitted hearsay evidence, Matthews is not entitled to relief. The purpose of the hearsay rule is to prevent the admission of unreliable and untrustworthy testimony that is not subject to cross examination. **Commonwealth v. Bean**, 677 A.2d 842, 844 (Pa. Super. 1996). In this case, Matthews had the opportunity to confront and cross examine Nurse Mummey regarding the victim's statements. N.T., Trial at 327-335, 337-38. Moreover, the victim testified at trial and was also subject to defense counsel's cross-examination. Id. at 192-208, 218-20. Hence, Matthews' first issue on appeal is without merit.

### B. Grading of Intimidation of a Witness Conviction

Next, Matthews argues "[his] conviction for intimidation of a witness, graded as a first degree felony, was illegal." Statement of Errors at ¶ 2. The crime of intimidation of a witness or victim is defined, in relevant part, as follows:

> A person commits an offense if, with the intent to or with the knowledge that his conduct will obstruct, impede, impair, prevent or interfere with the administration of criminal justice, he intimidates or attempts to intimidate any witness or victim to:
> (1) Refrain from informing or reporting to any law enforcement officer, prosecuting official or judge concerning any information, document or thing relating to the commission of a crime.

8

18 Pa.C.S.A. § 4952(a)(1). The grading of the offense of intimidation of a witness or victim is controlled by subsection (b):

> (1) The offense is a felony of the degree indicated in paragraphs (2) through (4) if:
>
>> (i) The actor employs force, violence or deception, or threatens to employ force or violence, upon the witness or victim or, with the requisite intent or knowledge upon any other person.
>> * * *
>
> (2) The offense is a felony of the first degree if a felony of the first degree or murder in the first or second degree was charged in the case in which the actor sought to influence or intimidate a witness or victim as specified in this subsection.
> (3) The offense is a felony of the second degree if a felony of the second degree is the most serious offense charged in the case in which the actor sought to influence or intimidate a witness or victim as specified in this subsection.
> (4) The offense is a felony of the third degree in any other case in which the actor sought to influence or intimidate a witness or victim as specified in this subsection.
> (5) Otherwise the offense is a misdemeanor of the second degree.

18 Pa.C.S.A. § 4952(b)(1)(i), (2)-(5). Pursuant to this statute, the grading of the offense begins as a second degree misdemeanor. 18 Pa.C.S.A. § 4952(b)(5). Subsection (b)(1)(i) provides that where the defendant used "force, violence or deception, or threatens to employ force or violence," the offense is elevated to a felony. 18 Pa.C.S.A. § 4952(b)(1)(i). The crime is further elevated to a first degree felony if the underlying case in which the witness or victim was involved was also a felony of the first degree or if the case involved a charge of murder. 18 Pa.C.S.A. § 4952(b)(2). **Commonwealth v. Johnson**, 961 A.2d 877, 883 (Pa. Super. 2008).

Applying these principles to Matthews' case, because Matthews was charged with aggravated assault, rape by forcible compulsion, and IDSI by forcible compulsion

9

as first-degree felonies, the grading of the intimidation of a witness charge was also as a first-degree felony, pursuant to subsection 4952(b)(2). *See* **Commonwealth v. Felder**, 75 A.3d 513, 516 (Pa. Super. 2013). Matthews contends, however, that because of trial court error his conviction for intimidation of a witness may only be graded as a second degree misdemeanor.

> Although the verdict slip contained the question: 'If guilty, do you find the defendant used force, violence or threatened to employ force or violence upon the victim or another person?', neither the verdict slip nor any instructions given by the court informed the jury that they were required to find *beyond a reasonable doubt* that this extra factor, which is an element of the offense, was present. Without a finding of the factor set forth in Section 4952(b)(1)(i) beyond a reasonable doubt, Mr. Matthews' conviction for intimidation of a witness may only be graded as a second degree misdemeanor.

Id. (emphasis in original).[10]

The jury convicted Matthews of intimidation of his girlfriend, J.R. The jury specifically found that Matthews threatened or employed force or violence in his intimidation of J.R. Thus, upon the jury's specific finding, the grade of the offense of intimidation of a witness was elevated to a first degree felony.

This Court instructed the jury in accordance with the Pennsylvania Suggested Standard Jury Instruction (Crim), 15.4952, for the offense of intimidation of witness or victim, and explicitly stated that each element of the offense had to be proven *"beyond a reasonable doubt."* N.T., Trial at 672. *See* Pa.S.S.J.I. (Crim) 15.4952. This Court

---

[10]Appellate counsel commented in a footnote that she did not have a copy of the verdict slip, and that this verdict slip should be made part of the record. *See* Statement of Errors at ¶ 2 n.1. The original verdict slip was found by my staff in the official file maintained by the Clerk of Courts; however, it was not time-stamped and did not appear to have been entered on the docket. This has been remedied.

10

further reiterated the jury's duty to find guilt beyond a reasonable doubt no less than 16 other times during the jury charge. Id. at 657, 659-60, 666-73, 675, 677, 679, 681-82. At no time was the jury instructed as to any lesser standard of proof, nor could it be. For, as our Supreme Court has explained:

> There are three standards of proof typically used in Pennsylvania jurisprudence: a preponderance of the evidence, clear and convincing evidence, and proof beyond a reasonable doubt. A preponderance of the evidence is 'a more likely than not inquiry,' supported by the greater weight of the evidence; something a reasonable person would accept as sufficient to support a decision. Clear and convincing evidence requires proof 'that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.' Both of these standards are traditionally applicable in civil matters.
>
> *Proof beyond a reasonable doubt, on the other hand, is a criminal standard and carries the highest evidentiary burden.* This standard impresses on the trier of fact the necessity of reaching a subjective state of certitude of the facts in issue.

**Commonwealth v. Batts,** — Pa. —, 163 A.3d 410, 453-54 (2017) (citations, internal quotations, and footnote omitted) (emphasis added).

Matthews' conviction for intimidation of a witness was properly graded as a first degree felony. Accordingly, this second issue on appeal lacks merit and should be denied.

### C. Second Strike Offender

Lastly, Matthews claims his sentence as a second-strike offender is illegal. He argues that this Court erred in sentencing him as a second-strike offender pursuant to 42 Pa.C.S.A. § 9714, where his conviction for kidnapping in Arizona was not a previous

11

"crime of violence" as set forth in Section 9714. Pennsylvania's recidivist sentencing statute provides, in pertinent part, as follows:

### § 9714. Sentences for second and subsequent offenses
(a) Mandatory sentence. --
(1) Any person who is convicted in any court of this Commonwealth of a crime of violence shall, if at the time of the commission of the current offense the person had previously been convicted of a crime of violence, be sentenced to a minimum sentence of at least ten years of total confinement[.]

42 Pa.C.S.A. § 9714(a)(1).[11]

Subsection (g) of the statute defines "crime of violence" as, *inter alia*, "kidnapping . . . or an equivalent crime in another jurisdiction." 42 Pa.C.S.A. § 9714(g). Because Matthews' prior conviction for kidnapping is from Arizona, a determination had to first be made as to whether there is an equivalent Pennsylvania statute for this Arizona crime. "An equivalent offense is that which is substantially identical in nature and definition [to] the out-of-state or federal offense when compared [to the] Pennsylvania offense." **Commonwealth v. Shaw**, 560 Pa. 296, 304, 744 A.2d 739, 743 (2000) (*quoting* **Commonwealth v. Bolden**, 367 Pa. Super. 333, 338-39, 532 A.2d 1172, 1175-76 (1987)).[12] *See also* **Commonwealth v. Spenny**, 128 A.3d 234, 250 (Pa. Super. 2015) ("[W]hen determining the Pennsylvania equivalent statute for a prior, out-of-state

---

[11]Section 9714(a)(2) provides for a 25-year mandatory minimum when the defendant had previously been convicted of "two or more such crimes of violence arising from separate criminal transactions[.]" 42 Pa.C.S.A. § 9714(a)(2). As noted above, the Commonwealth originally proceeded under subsection (a)(2), but later conceded that Matthews' prior convictions for aggravated robbery and aggravated assault in Arizona did not constitute equivalent crimes of violence under subsection 9714(g).

[12]Our Supreme Court adopted the **Bolden** test in **Commonwealth v. Northrip**, 603 Pa. 544, 985 A.2d 734 (2009), to determine the Pennsylvania equivalent offense for a prior, out-of-state conviction under the "Three Strikes Law," 42 Pa.C.S.A. § 9714.

conviction for prior record score purposes, courts must identify the elements of the foreign conviction and on that basis alone, identify the Pennsylvania statute that "is substantially identical in nature and definition" to the out-of-state offense.").

The Commonwealth argued that Matthews' 2010 Arizona kidnapping conviction was equivalent to the Pennsylvania kidnaping statute, and this Court agreed. Although Matthews did not challenge this ruling in his post sentence motion, he now disputes that his prior Arizona kidnapping conviction was a crime of violence as set forth in Section 9714.

On March 2, 2010, Matthews was convicted of kidnapping and aggravated assault in Maricopa County, Arizona.[13] The elements of kidnapping required by Arizona are:

> A person commits kidnapping by knowingly restraining another person with the intent to:

---

[13]The probable cause statement for the arrest provides as follows:
On 7/27/2009 between the hours of 0100-0800, Matthews held [the victim] against her will not allowing her to leave the apartment. She attempted to escape running out of the apartment, Matthews chased her down and grabbed her hair pulling her back inside and punching her. [The victim] stated that Matthews pushed the couch against the door which is the only entry/exit for the one bedroom upstairs apartment. Matthews assaulted her numerous times using his hands to chock [sic] her around the neck. [The victim] stated that she passed out from lack of oxygen 3 separate times. Matthews bit her right cheek leaving teeth marks and causing her cheek to swell. [The victim] told me that Matthews punched her numerous times in the face, arms, shoulders, chest, and back causing severe swelling and bruising. She stated that Matthews made her take all her clothes off so she couldn't run out. [The victim] said that he used an electrical cord from a hair press to wrap around her neck and chock [sic] and threaten her. Matthews told her that if the Police come to the door that he will KILL her before they get inside. He told her that he has no problem going back to prison but he will ensure she is dead before anyone can help her.
See Commonwealth's Sentencing Memorandum, Appendix "A" at p. 34 (emphasis in original).

13

. . .

> 3. [i]nflict death, physical injury or a sexual offense on the victim, or to otherwise aid in the commission of a felony; or
> 4. [p]lace the victim or a third person in reasonable apprehension of imminent physical injury to the victim or the third person. . . .

Ariz. Rev. Stat. Ann. (A.R.S.A.) § 13-1304(A)(3), (4). *See also* **State v. Richter**, 243 Ariz. 131, 402 P.3d 1016, 1025-26 (2017).

"Restrain," as defined by the Arizona legislature, means "to restrict a person's movements without consent, without legal authority, and in a manner which interferes substantially with such person's liberty, by either moving such person from one place to another or by confining such person." A.R.S.A. § 13-1301(2). "Restraint is without consent if it is accomplished by . . . [p]hysical force, intimidation or deception." Id. at § 13-1301(2)(a). Thus, the three elements of kidnapping in Arizona are: (1) knowingly restraining the movement of another person; (2) by force, intimidation or deception, and in a manner that interferes with the other person's movements; and (3) with the intent to inflict death or physical injury upon the other person. *See* **State v. Latham**, 223 Ariz. 70, 73, 219 P.3d 280, 283 (2009); **State v. Styers**, 177 Ariz. 104, 112, 865 P.2d 765, 773 (1993).

Section 2901(a) of the Pennsylvania Crimes Code defines the offense of kidnapping as follows:

> [A] person is guilty of kidnapping if he unlawfully removes another a substantial distance under the circumstances from the place where he is found, or if he unlawfully confines another for a substantial period in a place of isolation, with any of the following intentions:
> (1) To hold for ransom or reward, or as a shield or hostage.
> (2) To facilitate commission of any felony or flight thereafter.
> (3) To inflict bodily injury on or to terrorize the victim or another.

14

> (4) To interfere with the performance by public officials of any governmental or political function.

18 Pa.C.S.A. § 2901(a). Thus, the three elements of kidnapping in Pennsylvania are: (1) the defendant unlawfully removed a person a substantial distance under the circumstances from the place where he is found, or if the defendant unlawfully confined a person for a substantial period in a place of isolation; (2) the removal or confinement was accomplished by force, threat, or deception; and (3) the defendant did so with the intent to obtain a ransom or reward, or to use the victim as a shield or a hostage, or to facilitate the commission of another felony, or to inflict bodily injury on or to terrorize the victim or another. Id. *See also* **Commonwealth v. Green**, 149 A.3d 43, 48 (Pa. Super. 2016).

This Court made a legal determination that the elements of the kidnapping statutes from both states are equivalent. The first element of the Arizona statute, knowingly restraining the movement of another person, is present in the first and second elements of the Pennsylvania statute, which require that the defendant unlawfully controls the victim's movements by moving the victim, or by isolating the victim. The second element of the Arizona kidnapping statute, the use of force, intimidation or deception to accomplish the crime, is present in the second element of the Pennsylvania kidnapping statute, which requires that the removal or confinement be accomplished by force, threat, or deception. The third element of the Arizona kidnapping statute, the intent to inflict death or physical injury, is present in the Pennsylvania kidnapping statute in subsection 2901(a)(3), as the intent to inflict bodily injury on the victim.

15

Matthews argues, however, that there are "appreciable differences"[14] between the statutes because Arizona has no element requiring the removal of another *any distance*, nor an element requiring the confinement or restraint to occur for a *substantial period of time*, nor an element regarding where the confinement must take place, *i.e.*, a *place of isolation*, as does Pennsylvania. Matthews claims these "appreciable differences" make the Arizona statute more general than Pennsylvania's kidnapping statute.

In Pennsylvania, there are two distinct means of showing criminal culpability for purposes of kidnapping: unlawful removal for a substantial distance *or* unlawful confinement for a substantial period in a place of isolation. With respect to the element of removal for a substantial distance, our Supreme Court has noted:

> For purposes of the kidnapping statute, a substantial distance is not limited to a defined linear distance or a certain time period. The determination of whether the victim was moved a substantial distance is evaluated under the circumstances of the incident. Further, the guilt of an abductor cannot depend upon the fortuity of the distance he has transported his victim nor the length of time elapsed.

**Commonwealth v. Malloy**, 579 Pa. 425, 446, 856 A.2d 767, 779 (2004) (citations and internal quotation marks omitted). Our Superior Court has found that "a sensible interpretation [of the words "substantial distance"] is one that views a substantial distance as one that isolates the victim and exposes the victim to an increased risk of harm." **In re T.G.**, 836 A.2d 1003 (Pa. Super. 2003) (*quoting* **Commonwealth v. Campbell**, 353 Pa. Super. 178, 509 A.2d 394, 397 (1986)).

---

[14]*See* **Shaw**, 560 Pa. at 306-07, 744 A.2d at 744-45 (noting that where there is "an appreciable difference in the elements of the in-state and out-of-state offenses at issue," a finding that the offenses are "equivalent" is precluded).

16

In **In re T.G.**, the Superior Court concluded the defendant unlawfully removed a victim a "substantial" distance where the victim was playing outside of the house located next to defendant's house when defendant grabbed the victim and took her inside of his house. 836 A.2d at 1006-07. The Court found that, under the circumstances, the movement of the victim placed the victim "in a completely different environmental setting removed from the security of familiar surroundings" such that the statutory definition of kidnapping was met. Id. at 1006. Consequently, Pennsylvania's element of "substantial distance" can be satisfied by movement of just mere feet.

With respect to the elements of confinement for a substantial period of time in a place of isolation, our Superior Court has stated:

> [W]hat is a substantial period in time can depend on the mental state of the victim. The fright that can be engendered in 30 minutes can have the same debilitating effect on one person as 30 hours may have on another. When considering what qualifies as confinement in a place of isolation, this Court has held:
>> the concept is not geographic isolation, but rather effective isolation from the usual protections of society. One's own apartment in the city can be a place of isolation, if detention is under the circumstances which make discovery or rescue unlikely. The requirement that the victim be confined in a place of isolation does not require that the victim be left alone; the fact that other people are present does not necessarily negate the victim's isolation from the usual protections of society.

**Green**, 149 A.3d at 49 (*quoting* **In re T.G.**, 836 A.2d at 1008) (internal quotation marks, brackets and citations omitted). Accordingly, our Commonwealth's courts have concluded the place-of-isolation requirement was met when the victims were bound and not able to leave their own residence (*see* **Commonwealth v. Rushing**, 627 Pa. 59, 99 A.3d 416 (2014)), when the victim was bound and gagged and left alone in the living

17

room of a trailer, even though located in a busy trailer park (*see* **Commonwealth v. Housman**, 604 Pa. 596, 986 A.2d 822 (2009)), and when an elderly grandmother and her grandson were held at knifepoint inside the grandmother's home and the victims were unreachable and locked inside the house (*see* **Commonwealth v. Jenkins**, 455 Pa. Super. 152, 687 A.2d 836 (Pa. Super. 1996)).

The Arizona statute requires "substantial interference with a person's liberty," which the legislature has defined as "either moving such person from one place to another or by confining such person." *See* A.R.S.A. § 13-1301(2); **Latham**, 223 Ariz. at 73, 219 P.3d at 283. This element of "substantial interference with the victim's movements" in Arizona's statute is consistent with Pennsylvania's requirement of "unlawful removal for a substantial distance," or "confinement or restraint for a substantial period of time." Therefore, Matthews' kidnapping conviction from Arizona is a conviction of a prior crime of violence and a valid basis for the imposition of a mandatory minimum sentence pursuant to 42 Pa.C.S.A. § 9714.

## III. Conclusion

For the reasons noted above, Matthews' judgment of sentence should be affirmed and his appeal dismissed.

Accordingly, I enter the following:

18

# IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
## C R I M I N A L

COMMONWEALTH OF PENNSYLVANIA : 
: 
v. :      No. 3836 - 2015(B)
: 
TOMAS MIGUELE MATTHEWS :

## O R D E R

AND NOW, this 7th day of December, 2017, the Court hereby submits this

Opinion pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure.

BY THE COURT:

DAVID L. ASHWORTH
JUDGE

Copies to:     Susan E. Moyer, Assistant District Attorney
MaryJean Glick, Senior Assistant Public Defender